Benjamin K. Lusty (USB 12159)
**RENCHER ANJEWIERDEN**
460 South 400 East
Salt Lake City, Utah 84111
(801) 961-1300
ben@lawfirmra.com

*Attorney for Plaintiff*

<table>
<tr><td colspan="2" align="center"><b>IN THE UNITED STATES DISTRICT COURT<br>DISTRICT OF UTAH<br>SOUTHERN REGION, CENTRAL DIVISION</b></td></tr>
<tr><td>KEN PETERSON, an individual<br><br>          Plaintiff,<br>vs.<br><br>RICHARD WILLIAMS, in his individual and official capacity; DOAJO HICKS, in his individual and official capacity; MICHAEL LACOURSE, in his individual and official capacity; LYNN JOSEPH, in her individual and official capacity; DIXIE STATE UNIVERSITY, a public college of the State of Utah; JOHN DOES I-X, in their individual and official capacities; and ROE ENTITES I-X</td><td align="center"><b>COMPLAINT</b><br><br>and<br><br><b>JURY TRIAL DEMAND</b></td></tr>
</table>

## <u>COMPLAINT FOR CIVIL RIGHTS VIOLATIONS AND BREACH OF CONTRACT</u>

Plaintiff Ken Peterson, through the undersigned counsel, brings this action pursuant to 42 U.S.C. §1983, seeking damages and injunctive relief, to remedy violations of his rights secured by the First Amendment of the United States Constitution. Mr. Peterson also seeks damages for breach of contract, breach of the implied covenant of good faith and fair dealing, tortious discharge in violation of public policy, and other violations of Utah State Law committed by Defendants.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked under 28 U.S.C. §1331 and 28 U.S.C. §1343.

Additionally, jurisdiction is invoked under 42 U.S.C. §1983, 1988, and federal case law.

Supplemental jurisdiction over the pendant state law claims is proper pursuant to 28 U.S.C.

§1367(a) as well as federal case law.

2.      This Court possesses proper subject matter and personal jurisdiction over the parties.

3.      Venue is appropriate in this district.

4.      Defendants are citizens of and reside in the State of Utah.

5.      The acts complained of occurred in the State of Utah. All violations of civil rights and

constitutional rights complained of occurred under color of the law of the State of Utah.

Plaintiff's causes of action arose in Utah.

## PARTIES

6.      Plaintiff Ken Peterson is a citizen of the United States and a resident of the State of Utah.

At all times relevant herein he was a tenured professor at Dixie State University ("DSU") until

his termination from DSU in 2018.

7.      Defendant Richard Williams is a citizen of the United States and a resident of

Washington County, Utah. He is sued in his individual and official capacities. He was at all

times, relevant herein, President of DSU.

8.      Doajo Hicks is a citizen of the United States and a resident of Washington County, Utah.

He is sued in his individual and official capacities. He was, at all times relevant herein, General

Counsel of DSU.

9.      Michael Lacourse is a citizen of the United States and a resident of Washington County, Utah. He is sued in his individual and official capacities. He was, at all times relevant herein, Provost and Vice President of Academic Affairs of DSU.

10.     Lynn Joseph is a citizen of the United States and was at all relevant times a resident of Washington County, Utah. She is sued in her individual and official capacities. She was at all relevant times, employed by DSU as an "investigator."

11.     With respect to all facts and violations alleged in this complaint, Defendants acted under color of state law.

## GENERAL ALLEGATIONS OF FACT

12.     Plaintiff Peterson began teaching at DSU in 2002. Prior to his termination (further referenced below) he was a tenured professor of music, bearing the official title of "Professor of Music, Tenured." His duties included instructing students in the vocal arts, in music, and in assisting, on an extracurricular basis, in the production and staging of musical performances.

13.     Peterson obtained tenure in 2009.

14.     For his service to DSU, Peterson received a salary, medical and dental benefits, retirement benefits, and other rights and privileges as set forth in his agreement with DSU, and in DSU's manual, policies, and procedures.

15.     The rights and privileges Peterson enjoyed as a tenured professor of music at DSU included, without limitation, academic freedom, faculty rights, due process and peer judgment in termination proceedings, and continued employment absent dismissal for cause.

16.     Prior to his termination in 2018, Peterson had not been subject to any previous

disciplinary action.[1]

17.     In 2014, DSU terminated theatre professor Varlo Davenport following an accusation by a

student that Davenport had injured her in a classroom exercise. Peterson testified on Davenport's

behalf during a post-letter-of-termination faculty appeals process. Davenport was later acquitted

in a criminal trial, but was nevertheless terminated from DSU. He subsequently filed civil

litigation against DSU.

18.     Following Davenport's final termination, Peterson questioned the correctness of

Davenport's termination. Specifically, Peterson questioned whether the chair of Davenport's

department (Mark Houser) was competent in his leadership, and whether the administration had

acted in accordance with due process and good faith in its termination of Davenport.

19.     Peterson generally voiced his criticisms or concerns through in-person conversations with

members of his community. Peterson's criticisms and concerns were known to members of

DSU's Administration.

20.     Nevertheless, in no way or respect did Peterson voice these criticisms or concerns as an

agent of DSU, or in any guise or pretense that these criticisms or concerns were expressed as part

of his official duties as a tenured professor of music at DSU. Instead, Peterson voiced these

criticisms and concerns as a concerned member of the Southern Utah community, alarmed at the

potential that a state entity of considerable import in the community, may have been failing that

community.

21.     On March 2, 2018, Peterson received a letter identified as "Notice of Dismissal and

Termination of Appointment." ("Termination Letter"). The Termination Letter was signed by

---

[1] Peterson received a letter of warning from DSU in 2006 relating to his conduct, but this conduct was not formally
investigated or punished. A letter from DSU regarding the incident explicitly stated that it did not constitute
disciplinary proceedings.

Defendant Lacourse, as the Provost and Vice President of Academic Affairs. Defendants Williams and Hicks were copied on the Termination Letter.

22.    The Termination Letter accused Peterson of violation of DSU Policy 371 which sets out the bases for which a tenured professor may be dismissed for cause. The Termination Letter asserted that Peterson had engaged in "professional incompetence, serious misconduct or unethical behavior, and serious violation of University rules and regulations."

23.    Specifically, the Termination Letter accused Peterson of 1) disclosing confidential information about Mark Houser's (denied) tenure application; 2) claiming to "improperly represent the DSU Music Department" by asserting that many faculty members wanted Mr. Houser terminated; 3) refusing to work with the Theatre Department (where Mr. Houser worked) in the future; 4) using "slanderous" language against Mr. Houser by claiming he was "destroying" the Theatre Department; 5) accusing Mr. Houser and Defendant Williams of "corruption" in connection with the Varlo Davenport termination; 6) refusing to "demonstrate professional standards of behavior, including collegiality and the open exchange of ideas through civil disclosure" with respect to the Music Department; 7) encouraging members of the DSU faculty to inject bias and/or influence in their review of Houser's tenure application; and 8) persistent criticisms of the DSU administration and Mr. Houser to the public.

24.    The Termination Letter suspended Peterson with pay and barred him from entering DSU campus pending final confirmation of his termination.

25.    Peterson timely requested a Faculty Review Board hearing ("FRB hearing") of his termination on March 28, 2018 consistent with DSU Policy 371.

26.    Notably, during the FRB hearing, DSU was represented by Defendant Joseph, a law school graduate, who (on information and belief) was admitted to practice law in at least one

jurisdiction in the United States. Defendant Joseph presented evidence and examined witnesses. Peterson, however, was specifically denied the right to have counsel present evidence and examine witnesses on his behalf. Consequently, Peterson was denied the ability to have his case and defense presented by a legally and forensically trained professional, skilled in examining witnesses, summarizing evidence, and making legal and forensic arguments.

27.     By contrast, Defendant Joseph, on behalf of DSU, presented a 46 page "Respondent's Statement of Just Cause" that detailed the bases of the Defendants' allegations against Peterson and concluded, as a matter of both fact and law that Peterson had engaged in misconduct warranting his termination. Further, following the FRB hearing, Defendant Joseph submitted a "summary" of the FRB hearing in which she (an attorney and DSU's representative at the FRB hearing) told the FRB that it must accept all of her conclusions as true and may not second guess her conclusions regarding whether Peterson had engaged in misconduct warranting his termination.

28.     The FRB hearing occurred on May 29, 2018. At the FRB hearing, Defendants denied Peterson the ability to have counsel of his choice address the FRB, or to have counsel of his choice examine witnesses on his behalf.

29.     Nevertheless, the FRB concluded, unanimously, that DSU's counsel "failed to provide a preponderance of information to satisfy the burden of proof in support of its accusations…" In a written ruling dated June 21, the FRB recommended that Peterson "be reinstated as a tenured professor of Music at DSU." The FRB concluded that Peterson should be warned not to engage in "unbecoming comments about the university or its administration," but concluded that he should not be terminated.

30.     Under DSU Policy 371, following an FRB hearing, the final decision as to termination

shall be made by the President of the University who may either accept the FRB's

recommendation, request that it reconvene and hold additional proceedings, or reject the FRB's

recommendation upon a determination that the findings were contrary to the information

presented.

31.     Because Defendant Williams was a subject of some of Peterson's criticisms, Defendant

Williams requested that the decision on whether to accept or reject the FRB's recommendation

be referred to Commissioner David L. Buhler of the Utah System of Higher Education (USHE).

Commissioner Buhler, however, referred the matter to Dr. Elizabeth J. Hitch, Associate

Commissioner for Academic and Student Affairs for the USHE.

32.     Dr. Hitch reviewed the documentation provided to her by the USHE and the DSU

counsel. She concluded that there was a preponderance of evidence as to several charges against

Peterson, but that the condition of "preponderance of information" to support the termination of

Plaintiff Peterson is not satisfied.

33.     In lieu of termination, Dr. Hitch issued the following sanctions in a written letter:

> Dr. Ken Peterson is suspended from his tenured professor position in the Music
> Department at Dixie State University without pay for 10 work days and reinstated in his
> tenured faculty position in the Department of Music at the conclusion of his suspensions.
> At the time of his reinstatement, the University shall issue a "final chance" letter
> outlining the expectations of his employment and consequences of similar policy
> violations in the future, up to and including termination.
>
> Moving forward in his ongoing employment, Dr. Ken Peterson shall not make unfounded
> derogatory statements about Dixie State University and its faculty, staff, students or
> administration. Additionally, he shall not discuss faculty matters with students and third
> parties, which would include the circumstances and details of Dr. Peterson's suspension
> and subsequent reinstatement.

34.     Although he denies that he engaged in unprofessional conduct or violated any of DSU's

policies, in the interest of returning to his passion and calling of teaching music, Peterson was

willing to acquiesce to Dr. Hitch's determination, including serving a 10 day suspension and not making "unfounded derogatory statements" about DSU, as well as refraining from discussion of faculty members with third parties and students. Indeed, Peterson had already been abiding by these rules in any event. Peterson explicitly denies that he had ever made any "unfounded" derogatory statements.

35.     Notwithstanding Dr. Hitch's determination, Defendant Hicks presented Peterson with a document identified as "Last Chance Agreement" ("LCA") and demanded that he execute and agree to the same or else be finally terminated.

36.     On information and belief, the LCA was drafted by Hicks at the direction of Williams and Lacourse.

37.     Notably, rather than constituting a "letter" as directed by Dr. Hitch, the LCA, as drafted, purported to constitute a contract that specifically altered and amended Peterson's existing tenure agreement with DSU.

38.     The LCA contains several provisions significantly and substantially diminishing Peterson's previous rights, privileges, and responsibilities as a tenured member of DSU's faculty. By way of illustration, the LCA contains the following provisions:

> 2. …Dr. Peterson will be assigned as 12-credit course load of General Education courses and 3-Service credits per semester…

> 5. Dr. Peterson shall not engage in any conduct that will damage, undermine, or sabotage DSU's Voice, Music, Theater, Art, and Dance programs or faculty;

> 6. …Dr. Peterson is excluded from all disciplinary, tenure and promotion committees, including but not limited to the following: faculty review boards, search committees and the selection process for department chairs, associate deans, or any retention decisions for chairs, deans, or associate deans;

> 8. Dr. Peterson shall not make unfounded or untruthful derogatory statements about DSU and its faculty, staff, students or administration… The content of this Last Chance Agreement, including the circumstances and details of Dr. Peterson's suspension and

subsequent reinstatement are to be treated as confidential information and not disseminated to third parties;

9. Dr. Peterson shall not utilize social media to make unfounded derogatory or untruthful statements about DSU and its faculty, staff, students, or administration.

10. Dr. Peterson shall not utilize a proxy to make unfounded or untruthful derogatory statements about DSU and its faculty, staff, students or administration.

12.  Dr. Peterson shall cease unprofessional behaviors, many of which affect DSU's operations and services and are to the detriment of his fellow faculty, the staff, and most regrettably, the students in their efforts to achieve their educational goals;

15. Dr. Peterson shall not engage in any intimidating, threatening, and/or coercing conduct or speech with Houser or any faculty member, staff, administration, or any student or in any of DSU's campuses or facilities in a manner that results in an objectively hostile work or educational environment;

17. Dr. Peterson shall not engage in any inappropriate physical conduct including, but not limited to intimidating, threatening, and/or coercing conduct with Houser, or any other DSU faculty, staff, administration, in a manner that results in an objectively hostile work or educational environment;

18. Dr. Peterson shall not engage in any aggressive interpersonal encounters which disrupt classroom, departmental and/or organizational functioning

23. Dr. Peterson acknowledges and agrees that if he engages in any conduct prohibited by this Last Chance Agreement or fails to comply with any conditions required by this Last Chance Agreement, then (i) DSU's Human Resource Department and Office of the General Counsel will promptly investigate any claim of conduct that is prohibited by this Last Chance Agreement when DSU becomes aware of the alleged conduct, and (ii) any substantiated claim of prohibited conduct shall constitute just cause for his discharge from employment at DSU, and (iii) DSU shall immediately move for the termination of Dr. Peterson pursuant to DSU Policy 371: Faculty Termination.

39.      Peterson, believing that the LCA exceeded the terms of Dr. Hitch's determination,

requested that Defendants cease their attempts to condition Peterson's employment with DSU on

the LCA, in contrast to the directive of Dr. Hitch.

40.      Defendants refused this request. Peterson subsequently sought clarification and/or

intervention from Dr. Hitch. Unfortunately, this was unavailing.

41.     Peterson refused to sign the LCA because it violated his civil rights and grossly exceeded

the determination of Dr. Hitch. Dr. Hitch's determination, pursuant to the terms of the DSU

Faculty Manual, should have constituted the final action with respect to the March 2 Notice of

Termination, and thus restored Peterson to his employment following a 10 day suspension.

42.     Peterson discovered in August of 2018 that his employment had been terminated only

after he received notification that his son was no longer eligible for a tuition waiver as the child

of a faculty member.

43.     Subsequent to his termination by DSU, Peterson has attempted to find employment

suitable to his qualifications, but has been unable to do so. He has subsequently lost his former

income, retirement benefits, health insurance, and other employment benefits. He has had to

draw on savings to meet expenses. Peterson has also experienced a loss of well-being which is

inherent to pursuing gainful employment to which one is passionately attached.

44.     As a direct result of the Defendants' actions, Peterson has been damaged in an amount to

be proven at trial.

## FIRST CAUSE OF ACTION
### *Wrongful Termination Pursuant to 42 USC 1983, Violation of Freedom of Speech, All Defendants*

45.     Peterson restates every paragraph by this reference.

46.      Peterson as a tenured professor had a free speech/freedom of expression right protected

by the First Amendment and the Fourteenth Amendment.

47.     Peterson, although an employee of DSU, nevertheless had the right to speak and express

himself on matters of public concern.

48.     By expressing criticisms of the competence of Houser, a public employee, and the

justness of Defendants' actions in the termination of Davenport, Peterson was expressing himself

on a matter of public concern. These matters can be fairly considered as relating to any matter of political, social, or other concern to the community.

49.     In expressing his criticisms, Peterson was not purporting to speak as a representative of DSU, or any department, college, or division of DSU.

50.     Indeed, Peterson was merely speaking in his capacity as a private citizen on a matter of public concern. He was in no way speaking pursuant to his official capacity or within the course and scope of his official duties as a professor of music.

51.     Although DSU, as an employer, has an interest in promoting its mission as a public institution of higher learning, Peterson's statements did not justify or warrant his termination. DSU's interests, therefore, did not and do not outweigh Peterson's free speech interests.

52.     Peterson's protected speech was a motivating factor in DSU's determination to terminate Peterson.

53.     Absent Peterson's protected speech, DSU would not have acted to terminate him.

54.     In all relevant respects, Defendants acted under color of state law. Each of the individual Defendants sued in their individual and official capacities are employees of DSU, a public college organized and chartered under the authority of Utah state law. DSU, as such, is an instrumentality of the state and/or a municipality. As such, Defendants' acts subject them to liability pursuant to 42 U.S.C. 1983.

55.     DSU's acts in this respect subject it to liability because the acts of its employees were pursuant to official policy, practice or custom, and the individual defendants functioned as final policymakers.

56.     As a direct result of the foregoing, Peterson has been injured in that his employment has been wrongfully terminated.

57.     As a direct result of the foregoing, Peterson has suffered damages in an amount to be proven at trial.

58.     Prior to filing this suit, Peterson has given defendants notice consistent with the Utah Governmental Immunity Act.

## SECOND CAUSE OF ACTION
### *Violation of Freedom of Speech, Prior Restraints in violation of 42 USC 1983, All Defendants*

59.     Peterson restates every paragraph by this reference.

60.     Peterson as a tenured professor had a free speech/freedom of expression right protected by the First Amendment and the Fourteenth Amendment.

61.     Peterson as a tenured professor had a property right and interest in the continuation of his employment absent termination for good cause.

62.     The LCA presented to Peterson as a continuation of his employment constitutes an unlawful prior restraint on his lawfully protected First Amendment rights.

63.     The LCA's broad language forbids speech made by Peterson in his capacity as a citizen on matters of public concern.

64.     Any lawful interest DSU may have in regulating the speech of its employees does not justify the broad prohibitions and prior restraints contained in the LCA.

65.     The LCA constitutes an unlawful prior restraint on Peterson's first amendment rights, and therefore cannot constitute a valid condition for his continued employment.

66.     By imposing the LCA on Peterson as a condition of employment, Defendants violated Peterson's First Amendment rights.

67.     Peterson's protected speech was a motivating factor in DSU's determination to terminate Peterson.

68.     Absent Peterson's protected speech, DSU would not have acted to require him to sign the LCA as a condition of his ongoing employment.

69.     In all relevant respects, Defendants acted under color of state law. Each of the individual Defendants sued in their individual and official capacities are employees of DSU, a public college organized and chartered under the authority of Utah state law. DSU, as such, is an instrumentality of the state and/or a municipality. As such, Defendants' acts subject them to liability pursuant to 42 U.S.C. 1983.

70.     DSU's acts in this respect subject it to liability because the acts of its employees were pursuant to official policy, practice or custom, and the individual defendants functioned as final policymakers.

71.     As a direct result of the foregoing, Peterson has been injured in that his employment has been wrongfully terminated.

72.     As a direct result of the foregoing, Peterson has suffered damages in an amount to be proven at trial.

73.     Prior to filing this suit, Peterson has given defendants notice consistent with the Utah Governmental Immunity Act.

## THIRD CAUSE OF ACTION
### *Civil Conspiracy to Violate Constitutional Rights in violation of 42 USC 1983, All Defendants*

74.     Peterson restates every paragraph by this reference.

75.     Peterson enjoyed constitutional rights protected as alleged in this complaint.

76.     The Defendants had an express or implied agreement to violate Peterson's constitutional rights.

77.     The Defendants actually deprived Peterson of those rights as alleged in this complaint.

78.     In all relevant respects, Defendants acted under color of state law. Each of the individual Defendants sued in their individual and official capacities are employees of DSU, a public college organized and chartered under the authority of Utah state law. DSU, as such, is an instrumentality of the state and/or a municipality. As such, Defendants' acts subject them to liability pursuant to 42 U.S.C. 1983.

79.     DSU's acts in this respect subject it to liability because the acts of its employees were pursuant to official policy, practice or custom, and the individual defendants functioned as final policymakers.

80.     As a direct result of the foregoing, Peterson has been injured in that his employment has been wrongfully terminated.

81.     As a direct result of the foregoing, Peterson has suffered damages in an amount to be proven at trial.

82.     Prior to filing this suit, Peterson has given defendants notice consistent with the Utah Governmental Immunity Act.

### FOURTH CAUSE OF ACTION
***Breach of Contract, All Defendants***
***(Pendant Utah State Law Claim)***

83.     Peterson restates every paragraph by this reference.

84.     At all times, DSU maintained a policy manual as referenced herein.

85.     The policy manual identifies duties, rights, responsibilities, and obligations of Peterson, and of DSU. All other DSU employees, as well as Peterson, reasonably relied upon the policies as set forth in the manual as constituting the rules and regulations by which DSU would proceed in any termination proceedings. DSU, moreover, expected its employees to conform to the terms of the policy manual, and reasonably relied upon their compliance with it.

86.    The policy manual, and the parties' reliance on the same, establishes a contract enforceable at law.

87.    Peterson behaved in compliance with the Policy Manual.

88.    Defendants breached the policy manual.

89.    Specifically, Defendants violated Policy 371 by disregarding the conclusion of Dr. Hitch and imposing the LCA as a condition of continued employment.

90.    The policy manual contains an implied covenant of good faith and fair dealing.

91.    Defendants breached the implied covenant of good faith and fair dealing by disregarding the conclusion of Dr. Hitch and imposing the LCA as a condition of continued employment.

92.     As a direct result of the foregoing, Peterson has been injured in that his employment has been wrongfully terminated.

93.    As a direct result of the foregoing, Peterson has suffered damages in an amount to be proven at trial.

94.    The Utah governmental immunity act does not apply to breaches of contract claims.

**FIFTH CAUSE OF ACTION**
*Wrongful Termination in Violation of Public Policy, All Defendants*
*(Pendant Utah State Law Claim)*

95.    Peterson restates every paragraph by this reference.

96.    The state has demonstrated a clear public policy of ensuring to all persons the right to free speech, and enjoyment of other constitutional rights. This public policy is demonstrated in Utah's state constitution, Article I, section 15,  as well as the other laws and legal precedents of the state.

97.    Peterson's protected speech was a motivating factor in DSU's decision to terminate Peterson.

98.     Absent Peterson's protected speech, DSU would not have acted to require him to sign the LCA as a condition of his ongoing employment, or to terminate him upon refusal to sign the same.

99.     Additionally, the LCA acted to prevent Peterson from exercising his right to free speech in the future.

100.    The imposition of such strong restrictions on Peterson's speech both inappropriately restricts Peterson's speech and chills the future speech of other university and government employees on matters of public concern.

101.    Terminating Peterson as a result of exercising his right to free speech violates Utah's clearly established public policy in favor of freedom of speech.

102.     As a direct result of the foregoing, Peterson has suffered damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff requests the following:

A. For declaratory order of this Court stating that Defendants violated Peterson's constitutional rights;

B. For an injunctive order against Defendants reinstating Peterson to his position as a tenured professor at DSU, with back pay and benefits;

C. For nominal, compensatory, and other damages as set forth in the complaint;

D. For an award of costs, expert witness fees, and reasonable attorney fees, consistent with 42 U.S.C. 1982 and 1988;

E. For any other equitable and legal relief as this Court deems just and proper.

DATED this 16 day of August, 2019

/s/     Benjamin K. Lusty