DANIEL R. WIDDISON (11979)
JAQUALIN FRIEND PETERSON (6226)
Assistant Utah Attorneys General
SEAN D. REYES (7969)
Utah Attorney General
160 East 300 South, Sixth Floor
P.O. Box 140856
Salt Lake City, Utah 84114-0856
Telephone: (801) 366-0100
Facsimile: (801) 366-0101
dwiddison@agutah.gov
jfpeterson@agutah.gov
*Attorneys for Defendant*

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| KEN PETERSON, | **MOTION TO DISMISS** |
| Plaintiff(s), | |
| v. | Case No. 4:19-cv-00062-DN |
| RICHARD WILLIAMS, ind. & official capacity; DAOJO HICKS, ind. & off.; MICHAEL LACOURSE, ind. & off.; LYNN JOSEPH, ind. & off.; DIXIE STATE UNIV. JOHN DOES I-X, ind. & off; ROE ENTITES I-X, | Judge David Nuffer<br>Magistrate Judge Paul Kohler |
| Defendant. | |

Defendants, Richard Williams, Doajo Hicks, Michael Lacourse, Lynn Joseph, and Dixie

State University ("DSU"), by and through counsel, Assistant Attorneys General Daniel R.

Widdison and Jaqualin Friend Peterson, hereby move to dismiss Plaintiff's complaint pursuant to

Fed. R. Civ. P. 8 and 12.

i

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

STANDARD..........................................................................................................................1

    1.    Rule 12(b)(1)........................................................................................1

    2.    Rule 12(b)(6)........................................................................................2

STATEMENT OF FACTS.......................................................................................................4

ARGUMENT .......................................................................................................................9

I.    PLAINTIFF'S § 1983 CLAIMS AGAINST THE UNIVERSITY AND THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES MUST BE DISMISSED..........................................................................................................9

QUALIFIED IMMUNITY ...................................................................................................10

II.    PLAINTIFF HAS NOT STATED A CLAIM OF UNLAWFUL PRIOR RESTRAINT..16

III.    PLAINTIFF'S THIRD CAUSE OF ACTION FOR CONSPIRACY MUST BE DISMISSED........................................................................................................17

IV.    PLAINTIFF'S FORTH CAUSE OF ACTION FOR BREACH OF CONTRACT IS NOT COGNIZABLE AGAINST THE INDIVIDUAL DEFENDANTS. ...............................18

V.    PLAINTIFF FAILS TO STATE A PLAUSIBLE CAUSE OF ACTION FOR BREACH OF CONTRACT AGAINST DSU UNDER UTAH STATE LAW. ...............................19

    A.    Plaintiff fails to meet the pleading standard by failing to allege what essential term Defendant DSU breached under DSU's policy manual. ..........................................20

    B.    Plaintiff fails to meet the pleading standard by failing to allege sufficient facts showing performance by Plaintiff. ........................................................................22

    C.    Plaintiff fails to meet the pleading standards for a claim of Breach of the Implied Covenant of Good Faith and Fair Dealing................................................................23

VI.    UNDER UTAH LAW, DEFENDANT ARE ENTITLED TO IMMUNITY FROM PLAINTIFF'S FIFTH CAUSE OF ACTION FOR WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY. ..........................................................................24

CERTIFICATE OF MAILING ..............................................................................................27

ii

# TABLE OF AUTHORITIES

Cases

*Albright v. Rodriquez*, 51 F.3d 1531 (10th Cir. 1995) ....................................................12
*Am. W. Bank Members, L.C. v. State*, 2014 UT 49, , 342 P.3d 224...............................19, 22, 24
*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011)...........................................................11, 12
*Atuahene v. City of Hartford*, 10 Fed. Appx. 33 (2d Cir. 2001)........................................10
*Bair v. Axiom Design, L.L.C.*, 2001 UT 20, 20 P.3d 388.............................................19, 20
*Barton v. Clancy*, 632 F.3d 9 (1st Cir. 2011) .........................................................12
*Basso v. Utah Power & Light Co.*, 495 F.2d 906 (10th Cir. 1974) ........................................2
*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ...............................................3, 4
*Broadbent v. B'rd of Educ. of Cache Cnty School Dist.*, 910 P.2d 1274 (Utah Ct. App. 1996)...25
*Buckner v. Kennard*, 2004 UT 78 .......................................................................18
*Butler v. Kempthorne*, 2007 WL 2460698 (D. Colo. 2007)................................................2
*Carter v. Daniels*, 91 Fed.Appx. 83 (10th Cir. 2004) ..................................................7
*Casanova v. Ulibarri*, 595 F.3d 1120 (10th Cir. 2010)..................................................7
*Cherry v. Utah State University*, 966 P.2d 866 (Utah Ct. App. 1998)...................................18
*Code v. Utah Dept. of Health*, 2007 UT App. 390 ......................................................18
*Conner v. Dep't of Commerce*, 2019 UT App 91, 443 P.3d 1250.......................................24, 25
*Connick v. Myers*, 461 U.S. 138 (1983).................................................................13
*Davis ex. rel Davis v. United States*, 343 F.3d 1282 (10th Cir. 2003)..................................2
*Doyle v. Lehi City*, 291 P.3d 853 (Utah Ct. App. 2012) ...............................................12
*Gallagher v. Shelton*, 587 F.3d 1063 (10th Cir. 2009) .................................................3
*Gomes v Wood*, 451 F.3d 1122 (10th Cir. 2006).........................................................11
*Gossett v. Barnhart*, 139 Fed.Appx. 24 (10th Cir. 2005)................................................7
*Hansen v. America Online, Inc.*, 2004 UT 62, 96 P.3d 950.............................................24
*Harlow v. Fitzgerald*, 457 U.S. 800 (1982)............................................................11
*Henderson v. Glanz*, 813 F.3d 938 (10th Cir. 2015)....................................................12
*Holt v. United States*, 46 F.3d 1000 (10th Cir. 1995)..................................................2
*Hyland v. Dixie State Univ.*, No. 2:15-CV-36 TS, 2015 WL 4635466 (D. Utah Aug. 3, 2015) .....
.........................................................................................10, 24, 25
*Iqbal*, 556 U.S. 662 (2009)........................................................................3, 10
*Jacobsen v. Deseret Book Co*., 287 F.3d at 941
*Lytle v. City of Haysville, Kan.*, 138 F.3d 857 (10th Cir. 1998)......................................17
*McCubbin v. Weber Cty.*, No. 1:15-CV-132, 2017 WL 3394593 (D. Utah Aug. 7, 2017)..........25
*Mitchell v. Forsyth*, 472 U.S. 511 (1985).............................................................11
*Moore v. Guthrie*, 438 F.3d 1036 (10th Cir. 2006).......................................................3
*Mullenix v. Luna*, 136 S.Ct. 305 (2015)............................................................11, 12
*Pearson v. Callahan*, 555 U.S. 223 (2009) ............................................................12
*Piacitelli v. Southern Utah State College*, 636 P.2d 1063 (Utah 1981)................................18
*Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968) ..................................................13, 16
*Pierson v. Ray*, 386 U.S. 547 (1967) .................................................................11

*PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182 (10th Cir. 2010)......................................11
*Rankin*, 483 U.S. at 388, 107 S.Ct. at 2899.............................................................17
*Reichle v. Howards*, 566 U.S. 658 (2012)...............................................................12
*Richardson v. McKnight*, 521 U.S. 399 (1997) .........................................................11
*Riggins v. Goodman*, 572 F.3d 1101 (10th Cir. 2009) ................................................12
*Roach v. University of Utah*, 968 F.Supp 1446 (D. Utah 1997) ......................................9
*Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir. 2008) ..............................................10
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007)...............................7, 8
*Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504 (10th Cir. 1998) ....................17, 18
United States ex rel. Brooks v. Stevens-Henager Coll., Inc., 359 F. Supp. 3d 1088 (D. Utah 2019)......................................................................................................8, 9
*Utah Public Employees Ass'n v. State*, 2006 UT 9....................................................18
*V–1 Oil Co. v. Utah State Dep't of Pub. Safety*, 131 F.3d 1415 (10th Cir.1997) .........25
*Van de Grift v. State*, 2013 UT 11, 299 P.3d 1043 ..................................................24
*Van Woudenberg v. Gibson*, 211 F.3d 560 (10th Cir. 2000)........................................8
*Watson v. University of Utah Med. Cntr.*, 75 F.3d 569 (10th Cir. 1996)....................9, 10

## Statutes

42 U.S.C. § 1983 ............................................................................ 4, 9, 17, 18
Utah Code Ann. § 63G-7-101......................................................................25
Utah Code Ann. § 63G-7-101(2)(a)...............................................................25
Utah Code Ann. § 63G-7-101(5)(a)–(c)..........................................................25

## Rules

Civ. P., Forms 4 & 5 .............................................................................19
Fed. R. Civ. P. 8 and 12 ............................................................................ i
Fed. R. Civ. P. 8(a)(2)..............................................................................10
Fed. R. Evid. 201(b).................................................................................8
Fed. R. Evid. 201(c).................................................................................8
Rule 12(b)(1) ....................................................................................ii, 2
Rule 12(b)(6) .................................................................................ii, 2, 3

## INTRODUCTION

Plaintiff, Ken Peterson, was employed as a tenured professor of music by Dixie State University.  Following a decision by DSU to terminate another professor's employment, Plaintiff began voicing his concerns about DSU and its employees in various fora.  In doing so, Plaintiff made statements DSU believed were a violation of DSU's policies and initiated proceedings to terminate Plaintiff's employment.  Plaintiff challenged the proposed decision and the hearing panel recommended he be given a warning and instructed not to make "unbecoming" comments about DSU, its faculty, staff, and administration.  DSU appealed that decision to the President of the University pursuant to policy, who referred the matter to the state system of higher education, and a hearing officer was assigned to make the final decision.  The hearing officer, Dr. Elizabeth Hitch, determined that while there was not enough evidence to support termination, that there was enough evidence of misconduct, particularly in what Plaintiff said, to support a sanction of suspension and the issuance of a "last chance letter" which would inform Plaintiff that any further violation of policy would result in termination.  DSU opted to create a "Last Chance Agreement" which Plaintiff would have to sign.  Plaintiff refused, believing that it ran afoul of his right to free speech.  Plaintiff failed to appear at the beginning of the following semester and his employment was terminated as it appeared he had either resigned or abandoned his position. This litigation followed.

## STANDARD

1. Rule 12(b)(1)

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides that a court may exercise jurisdiction over a case or cause of action only when specifically authorized to do so and

demands that a court "dismiss [a] cause at any stage of the proceeding in which it becomes apparent that [subject matter] jurisdiction is lacking." *Basso v. Utah Power & Light Co., 495 F.2d 906, 909 (10th Cir. 1974)* (citations omitted). A "party who seeks to invoke federal jurisdiction bears the burden of establishing that subject matter jurisdiction is proper." *Id.* A party may go beyond the allegations in the complaint and challenge the facts upon which subject matter jurisdiction depends. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995) (citation omitted). "When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations." *Id.* (citation omitted). "[A] Court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts and the Court's reference to evidence outside the pleadings does not convert the motion to dismiss to a Rule 56 motion for summary judgment. *See Davis ex. rel Davis v. United States*, 343 F.3d 1282, 1294 (10th Cir. 2003) (holding that, in resolving a challenge to subject matter jurisdiction, it is appropriate to consider evidence beyond the pleadings); *Butler v. Kempthorne*, 2007 WL 2460698, *4-5 (D. Colo. 2007) (considering plaintiff's EEOC submissions in context of ruling on Fed.R.Civ.P. 12(b)(1) motion to dismiss for failure to exhaust administrative remedies).

### 2. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that the Court may dismiss any claim that "fail[s] to state a claim upon which relief can be granted." When considering a motion to dismiss, the Court views the complaint in a light most favorable to the plaintiff. *See Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006). Nevertheless, a claim must be dismissed if the

complaint does not contain enough facts to make the claim "plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007).

"'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) (quoting *atuaft v. Iqbal*, 556 U.S. 662 (2009)). Further, a complaint must allege "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action," and it must "raise a right to relief above the speculative level." *Twombly,* 550 U.S. at 555. A complaint must give a defendant "fair notice of what the claim is . . . and the grounds upon which it rests." *Id.* (quotations and citation omitted) (alteration in original).

In determining the adequacy of a targeted complaint, the court should engage in a two-part process. First, the court should begin by identifying allegations that, because they "are no more than conclusions, are not entitled to the assumption of truth." *Iqbal,* 556 U.S. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. Next, after excluding conclusory assertions, the court then assumes the veracity of well-pleaded allegations and determines whether they plausibly give rise to an entitlement to relief. *Id.* Rule 12(b)(6) does not allow a plaintiff to file a complaint devoid of supporting facts as a vehicle to commence discovery on the off chance some facts might exist which could support a plausible claim. *Twombly,* 550 U.S. at 555, 562-63. Under *Twombly* and *Iqbal*, Plaintiff's Complaint fails to state a claim for relief under 42 U.S.C. § 1983.

## STATEMENT OF FACTS

The following statement of facts is taken from Plaintiff's complaint and the documents central thereto, and are offered for the purposes of this motion only, with the express reservation that Defendants may challenge their truthfulness at any point in this case:

1. Plaintiff, Ken Peterson, was a tenured professor of music at DSU until August 2018. Plaintiff's Complaint, Doc. 3, ¶ 6.

2. Richard Williams was President of DSU during the events relevant to the complaint. Plaintiff's Complaint, Doc. 3, ¶ 7.

3. Doajo Hicks was General Counsel of DSU during the events relevant to the complaint. Plaintiff's Complaint, Doc. 3, ¶ 8.

4. Michael Lacourse was Provost of DSU during the events relevant to the complaint. Plaintiff's Complaint, Doc. 3, ¶ 9.

5. Lynn Joseph was an employee of DSU during the events relevant to the complaint. Plaintiff's Complaint, Doc. 3, ¶ 10.

6. In 2014, Plaintiff testified in an administrative hearing on behalf of Varlo Davenport, another professor at DSU who was facing termination at the time. Plaintiff's Complaint, Doc. 3, ¶ 17.

7. Following Davenport's final termination, Peterson questioned the correctness of Davenport's termination. Specifically, Peterson questioned whether the chair of Davenport's department (Mark Houser) was competent in his leadership, and whether the administration had acted in accordance with due process and good faith in its termination of Davenport. Plaintiff's Complaint, Doc. 3, ¶ 18.

4

8.   Peterson generally voiced his criticisms or concerns through in-person conversations with members of his community. Peterson's criticisms and concerns were known to members of DSU's Administration. Plaintiff's Complaint, Doc. 3, ¶ 19.

9.   On March 2, 2018, Peterson received a letter identified as "Notice of Dismissal and Termination of Appointment." ("Termination Letter"). The Termination Letter was signed by Defendant Lacourse, as the Provost and Vice President of Academic Affairs. Plaintiff's Complaint, Doc. 3, ¶ 21.

10.  Specifically, the Termination Letter accused Peterson of 1) disclosing confidential information about Mark Houser's (denied) tenure application; 2) claiming to "improperly represent the DSU Music Department" by asserting that many faculty members wanted Mr. Houser terminated; 3) refusing to work with the Theatre Department (where Mr. Houser worked) in the future; 4) using "slanderous" language against Mr. Houser by claiming he was "destroying" the Theatre Department; 5) accusing Mr. Houser and Defendant Williams of "corruption" in connection with the Varlo Davenport termination; 6) refusing to "demonstrate professional standards of behavior, including collegiality and the open exchange of ideas through civil disclosure" with respect to the Music Department; 7) encouraging members of the DSU faculty to inject bias and/or influence in their review of Houser's tenure application; and 8) persistent criticisms of the DSU administration and Mr. Houser to the public. Plaintiff's Complaint, Doc. 3, ¶ 23.

11.  Peterson timely requested a Faculty Review Board hearing ("FRB hearing") of his termination on March 28, 2018 consistent with DSU Policy 371. Plaintiff's Complaint, Doc. 3, ¶ 25.

12. The FRB concluded, unanimously, that DSU's counsel "failed to provide a preponderance of information to satisfy the burden of proof in support of its accusations…" In a written ruling dated June 21, the FRB recommended that Peterson "be reinstated as a tenured professor of Music at DSU." The FRB concluded that Peterson should be warned not to engage Case 4:19-cv-00062-DN-PK Document 5 Filed 08/19/19 Page 6 of 17 in "unbecoming comments about the university or its administration," but concluded that he should not be terminated. Plaintiff's Complaint, Doc. 3, ¶ 29.

13. Under DSU Policy 371, following an FRB hearing, the final decision as to termination shall be made by the President of the University who may either accept the FRB's recommendation, request that it reconvene and hold additional proceedings, or reject the FRB's recommendation upon a determination that the findings were contrary to the information presented. Plaintiff's Complaint, Doc. 3, ¶ 30.

14. Because President Williams was a subject of some of Peterson's criticisms, President Williams requested that the decision on whether to accept or reject the FRB's recommendation be referred to Commissioner David L. Buhler of the Utah System of Higher Education (USHE). Commissioner Buhler, however, referred the matter to Dr. Elizabeth J. Hitch, Associate Commissioner for Academic and Student Affairs for the USHE. Plaintiff's Complaint, Doc. 3, ¶ 31.

15. Dr. Hitch reviewed the documentation provided to her by the USHE and the DSU counsel. She concluded that there was a preponderance of evidence as to several charges

6

against Peterson, but that the condition of "preponderance of information" to support the

termination of Plaintiff Peterson is not satisfied. Plaintiff's Complaint, Doc. 3, ¶ 32.

16. In lieu of termination, Dr. Hitch issued the following sanctions in a written letter:

> Dr. Ken Peterson is suspended from his tenured professor position in the Music
> Department at Dixie State University without pay for 10 work days and reinstated in his
> tenured faculty position in the Department of Music at the conclusion of his suspensions.
> At the time of his reinstatement, the University shall issue a "final chance" letter
> outlining the expectations of his employment and consequences of similar policy
> violations in the future, up to and including termination.

> Moving forward in his ongoing employment, Dr. Ken Peterson shall not make unfounded
> derogatory statements about Dixie State University and its faculty, staff, students or
> administration. Additionally, he shall not discuss faculty matters with students and third
> parties, which would include the circumstances and details of Dr. Peterson's suspension
> and subsequent reinstatement.
> Compl., ¶ 33; *see also*, Exhibit 1, Dr. Hitch Letter, p. 6.[1]

---

[1] Generally, the sufficiency of a complaint must rest on its contents alone. *See Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010); *Gossett v. Barnhart*, 139 Fed.Appx. 24, 24 (10th Cir. 2005)(unpublished)("In ruling on a motion to dismiss, the district court is limited to the facts pled in the complaint."). Emphasizing this point, the Tenth Circuit, in *Carter v. Daniels*, 91 Fed.Appx. 83 (10th Cir. 2004)(unpublished), stated: "When ruling on a Rule 12(b)(6) motion, the district court must examine only the plaintiff's complaint. The district court must determine if the complaint alone is sufficient to state a claim; the district court cannot review matters outside of the complaint." 91 Fed.Appx. at 85.  There are three limited exceptions to this general principle: (i) documents that the complaint incorporates by reference, *see Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007); (ii) "documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity," *Jacobsen v. Deseret Book Co.*, 287 F.3d at 941; and (iii) "matters of which a court may take judicial notice," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. at 322, 127 S.Ct. 2499. "[T]he court is permitted to take judicial notice of its own files and records, as well as facts which are a matter of public record." *Van Woudenberg v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001). A matter of public record is a fact that is not subject to reasonable dispute because the fact "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *United States ex rel. Brooks v. Stevens-Henager Coll., Inc.*, 359 F. Supp. 3d 1088, 1102 (D. Utah 2019) (citing Fed. R. Evid. 201(b)). If a party requests that a court take judicial notice of a fact and supplies the court with the necessary information to do so, the court must take judicial notice of the fact. Fed. R. Evid. 201(c).  The Dr. Hitch letter is not only referenced

17. Although he denies that he engaged in unprofessional conduct or violated any of DSU's policies, in the interest of returning to his passion and calling of teaching music, Peterson was willing to acquiesce to Dr. Hitch's determination, including serving a 10 day suspension and not making "unfounded derogatory statements" about DSU, as well as refraining from discussion of faculty members with third parties and students. Indeed, Peterson had already been abiding by these rules in any event. Plaintiff's Complaint, Doc. 3, ¶ 34.

18. Following Dr. Hitch's decision, DSU presented Plaintiff with a "Last Chance Agreement" laying out DSU's expectations of Plaintiff as he continued his employment. Compl., ¶ 35.  A copy of the Last Chance Agreement is attached hereto as Exhibit 3.

19. Peterson refused to sign the Last Chance Agreement believing it was contradicted by Dr. Hitch's letter.  Compl., ¶¶ 39-41.

20. The 2018-2019 academic year began on August 13, 2018.  *See* Academic Calendar, attached hereto as Exhibit 2.[2]

21. Classes started on August 20, 2018.  *Id.*

22. Tuition was due on August 20, 2018.  *Id.*

23. Plaintiff "discovered" in August 2018 that his child was no longer eligible for a tuition waiver because Plaintiff was no longer employed by DSU.

---

throughout the complaint, it is quoted extensively and central to Plaintiff's claims that DSU departed from the language and direction of the letter in each cause of action.

[2] The academic calendar is the type of historical fact of which this Court can take judicial notice. *See* fn., ___, above.

## ARGUMENT

In his Complaint, Plaintiff asserts a variety of constitutional and contractual claims, but does not allege enough facts to state a claim that is plausible on its face. Moreover, Plaintiff's constitutional claims against the University and the individual defendants in their official capacities are barred by 11th Amendment immunity. The claims against the individuals in their individual capacities are barred by qualified immunity. Plaintiff's contract claims against DSU are barred because Plaintiff fails to meet the pleading standards for a claim of breach of contract under Utah law. Particularly, Plaintiff has not alleged facts supporting his claim that DSU acted outside its discretion in issuing the Last Chance Agreement, which required Plaintiff to comply with the conditions outlined in Dr. Hitch's decision. Plaintiff's own failure to comply with his obligations under the contract is fatal to his contract claim. Finally, Plaintiff's wrongful termination claim is barred by the Utah Governmental Immunity Act. Accordingly, all of Plaintiff's claims must be dismissed with prejudice.

### I.  PLAINTIFF'S § 1983 CLAIMS AGAINST THE UNIVERSITY AND THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES MUST BE DISMISSED.

As previously addressed and affirmed by this Court, the University is an arm of the state and not a person under § 1983, *see Watson v. University of Utah Med. Cntr.*, 75 F.3d 569, 574 (10th Cir. 1996); *Roach v. University of Utah*, 968 F.Supp 1446, 1450-51 (D. Utah 1997); *Hyland v. Dixie State Univ.,* No. 2:15-CV-36 TS, 2015 WL 4635466, at *1–2 (D. Utah Aug. 3, 2015) (DSU is not a person under § 1983) which is the statutory vehicle for bringing a constitutional claim. For this reason, Plaintiff cannot bring his § 1983 First Amendment

Retaliation claim against the University and must remove the University as a named party to this action.

By the same token, the individual defendants named in their official capacities are immune from suit. *Watson*, 75 F.3d at 577. Accordingly, the official capacity claims against the individual defendants must also be dismissed.

## QUALIFIED IMMUNITY

In the context of Fed. R. Civ. P. 8(a)(2), a plaintiff's failure to "isolate the allegedly unconstitutional acts of each defendant ... ***does not provide adequate notice*** as to the nature of the claims against each." *Robbins v. Oklahoma,* 519 F.3d 1242, 1250 (10th Cir. 2008) (emphasis added); *see also Iqbal,* 556 U.S. at 676. Likewise, a "complaint's use of either the collective term 'Defendants' or ***a list of the defendants named individually but with no distinction as to what acts are attributable to whom*** [makes it] impossible for any of these individuals to ascertain what particular unconstitutional acts they are alleged to have committed." *Robbins*, 519 F.3d at 1250 (citing *Atuahene v. City of Hartford,* 10 Fed. Appx. 33, 34 (2d Cir. 2001) <u>(emphasis added)</u>). Here, Plaintiff fails to meet this standard because, as outlined below, he does not identify the specific conduct of each defendant which allegedly violated his First Amendment Rights.

Even if Plaintiff could adequately allege an affirmative link tying each Defendant to Plaintiffs First Amendment Retaliation claim, all defendants should still be dismissed as they each enjoy qualified immunity. "The doctrine of qualified immunity shields officials from civil liability so long as their conduct 'does not violate a clearly established statutory or constitutional right of which a reasonable person would have known.'" *Mullenix v. Luna,* 136 S.Ct. 305, 308

(2015) (citation omitted).[3] The Supreme Court has identified three purposes underlying qualified immunity. "First, qualified immunity 'protect[s] the public from unwarranted timidity on the part of public officials.' Second, [it] helps 'to ensure that talented candidates are not deterred by the threat of damages suits from entering public service. Third, qualified immunity reduces the chance that lawsuits will distract from the performance of public duties." *Gomes v Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006) (first alteration in original) (quoting *Richardson v. McKnight*, 521 U.S. 399, 408 (1997)). Moreover, qualified immunity is not merely a defense to liability; it is "an immunity from suit" "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The doctrine "gives government officials breathing room to make reasonable but mistaken judgments" and "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (citation omitted).

When a defendant asserts qualified immunity, the plaintiff bears a "heavy burden" under a two-part analysis. *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1196 (10th Cir. 2010). The plaintiff must show: (1) that the defendant "violated a statutory or constitutional right"; and (2) that "the right was 'clearly established' at the time of the challenged conduct." *Ashcroft*, 131 S. Ct. at 2080. This Court has discretion to decide which of the two-part analysis should be addressed first. *See Henderson v. Glanz*, 813 F.3d 938, 952 (10th Cir. 2015). *See also Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (explaining that courts are not required to address the prongs

---

[3] "[W]here an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken 'with independence and without fear of consequences.'" *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982) (quoting *Pierson v. Ray,* 386 U.S. 547, 554 (1967)).

of the qualified immunity test in any particular order); *Doyle v. Lehi City,* 291 P.3d 853, 859 (Utah Ct. App. 2012) (quoting *Barton v. Clancy,* 632 F.3d 9, 22 (1st Cir. 2011) ("Courts may conduct this [initial two-part] inquiry sequentially, or resolve a particular case on the second prong alone."). "If the plaintiff fails to carry either part of his two-part burden, the defendant is entitled to qualified immunity." *Albright v. Rodriquez,* 51 F.3d 1531, 1535 (10th Cir. 1995).

For purposes of the qualified immunity doctrine, "[t]he 'clearly established' inquiry examines whether the contours of the constitutional right were so well-settled, in the particular circumstances presented, that 'every reasonable [state] official would have understood that what he is doing violates that right.'" *Reichle v. Howards,* 566 U.S. 658 (2012). Thus, to establish that a constitutional right is clearly established, a plaintiff must ordinarily make reference to "cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Riggins v. Goodman,* 572 F.3d 1101, 1111 (10th Cir. 2009) (citation omitted). Plaintiff need not identify "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft,* 131 S.Ct. at 2083.  Moreover, the Supreme Court has repeatedly instructed federal courts "'not to define clearly established law at a high level of generality.'" *Mullinex,* 136 S.Ct. at 308 (citation omitted). "The dispositive question is whether the violative nature of particular conduct is clearly established," which "inquiry must be undertaken in light of the specific context of the case, not as a general proposition." *Id.* (internal quotations and citation omitted).

In the free speech context, a plaintiff must overcome an additional hurdle.  As a public employee, Plaintiffs do "not relinquish First Amendment rights to comment on matters of public interest by virtue of [their] government employment." *Connick v. Myers,* 461 U.S. 138, 140

(1983). On the other hand, "the State's interests as an employer in regulating the speech of its employees 'differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general.'" *Id.* (quoting *Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968)).

Under qualified immunity analysis, Plaintiff has failed to identify who terminated his employment, and what actions were taken by each named Defendant which constituted first amendment retaliation, i.e. a specific adverse action.[4]  For that reason alone, Plaintiff has not pleaded enough facts to state his First Amendment Retaliation claim with plausibility and the First Cause of Action must be dismissed.

However, even were Plaintiff to identify the violative conduct in which each defendant engaged, his claims would still fail because Plaintiff fails to allege facts showing that termination of his employment was causally connected to his protected speech. In his first cause of action, Plaintiff alleges that he was harmed by virtue of wrongful termination, not the discipline imposed by Dr. Hitch.  Plaintiff fails to identify what speech he engaged in, instead he generally describes his speech in paragraphs 17-19 of the Complaint, stating that Plaintiff "testified on Davenport's behalf during a post-letter-of-termination faculty appeals process" and that Plaintiff "questioned the correctness of Davenport's termination...whether the chair of Davenport's department (Mark Houser) was competent in his leadership, and whether the administration had

---

[4] At paragraphs 35-36, Plaintiff alleges that Hicks drafted the LCA at the direction of Williams and Lacourse, but does not (nor can he) allege that the LCA itself was an adverse action nor does he identify who at the University terminated his employment.  At best, Plaintiff alleges that Hicks' direction to Plaintiff that he sign the LCA as a condition of continued employment is related to the alleged adverse action, but he does not affirmatively link any Defendant to the alleged adverse action—termination.

acted in accordance with due process and good faith in its termination of Davenport…through in-person conversations with members of his community." There is no doubt, based on the allegations, that Plaintiff was subsequently disciplined for his conduct as outlined in paragraph 23 of the Complaint and in Dr. Hitch's sanctions letter (attached as Exhibit 1). However, the conduct that led to the disciplinary process and Dr. Hitch's determination is not the basis of the first amendment retaliation claim in Plaintiff's Complaint.

In outlining his retaliation claim, Plaintiff states at paragraphs 52 and 53 of the Complaint, "Peterson's protected speech was a motivating factor in DSU's determination to terminate Peterson… Absent Peterson's protected speech, DSU would not have acted to terminate him." And finally, in paragraph 56, Plaintiff alleges, "As a direct result of the foregoing, Peterson has been injured in that his employment has been *wrongfully terminated*." (Emphasis added.) But also within the allegations of the Complaint,  while addressing the 10-day suspension and last chance letter, Plaintiff states, "[a]lthough he denies that he engaged in unprofessional conduct or violated any of DSU's policies, in the interest of returning to his passion and calling of teaching music, Peterson was willing to acquiesce to Dr. Hitch's determination, including serving a 10 day suspension and not making "unfounded derogatory statements" about DSU, as well as refraining from discussion of faculty members with third parties and students. Indeed, Peterson had already been abiding by these rules in any event…." Complaint, paragraph 34. Under his own allegations, Peterson asserts that he accepted the imposition of the 10-day suspension and limitations on his speech as outlined in Dr. Hitch's

findings. Because Peterson willingly accepted the discipline, the imposition of the discipline is

not retaliatory. Acquiescence to the limitation to his speech is fatal to his claim of retaliation.[5]

Nevertheless, Plaintiff has not alleged facts showing that he was terminated for failing to

abide by these provisions.  Plaintiff makes no allegation that he attempted to return to work

following the notice of intent issued on March 2, 2018, and in fact, acknowledges that, although

he was willing to acquiesce to Dr. Hitch's determination, he refused to abide by the terms of the

LCA.  Complaint, paragraph 41.  Plaintiff asserts that he was willing to modify his behavior as

outlined by Dr. Hitch's recommendation but does not identify what parts of the LCA were

contrary to that same recommendation.  As demonstrated by the content of Dr. Hitch's decision,

Plaintiff's continued employment with DSU required that he not engage in untruthful or

unfounded derogatory statements about the University or its administration. Ex. 1, p. 6.  In spite

of his objections and protestations, Plaintiff does not allege that he ever attempted to return to

work or that he was notified that his employment had been terminated.  Plaintiff only alleges that

he "discovered" his employment was terminated over a week after he was required to return to

work.  Ex. 2, Academic Calendar[6] and Complaint ¶ 42.  Plaintiff has not made any allegation

that he attempted to return to his employment and was denied or that he had engaged in any of

his required job duties.  The only reasonable inference under the allegations of the Complaint is

that Plaintiff "discovered" his employment ended only after he had knowingly failed to return to

---

[5] The original Faculty Review Board decision which recommended only a warning, also appears to have included a similar mandate that Plaintiff abide by the restriction on making unprofessional statements about the University or its administration.  *See* Exhibit 1, p. 6.

[6] Faculty were required to appear for faculty workshops on August 13, 2018, while tuition and fees were not due until August 20, 2018.  Had Plaintiff appeared for work on August 13 as required, he would have known his employment status prior to the due date for tuition.

his teaching duties more than a week after he was required to be begin work and even though the students, including his own child, had returned to school. Because Plaintiff has failed to allege an actual discharge or a connection to protected speech, there is no adverse action to support his retaliation claim and it must be dismissed.

## II.   PLAINTIFF HAS NOT STATED A CLAIM OF UNLAWFUL PRIOR RESTRAINT.

Plaintiff's second claim alleges that the LCA constitutes unlawful prior restraint in violation of the First Amendment.  Like his first cause of action, this claim is also brought pursuant to Section 1983.  As outlined above, the University is immune from liability, and claims against the individuals are subject to qualified immunity.  With the exception of Hicks, Plaintiff fails to allege which Defendant engaged in the alleged actions and a blanket inclusion of all Defendants is insufficient to survive a qualified immunity challenge in a motion to dismiss. Plaintiff's second claim must be dismissed on that basis alone.  However, even if properly pled, and as currently pled against Hicks, Plaintiff's second claim still fails.

At the time he was given the LCA, Plaintiff took issue with its content.  Complaint, paragraph 38.  Specifically, Plaintiff identifies 11 paragraphs that "significantly and substantially" diminish Plaintiff's "previous rights, privileges, and responsibilities…" *Id.*  Of those 11 paragraphs, paragraphs 2, 3, 6, 12, and 17 address conduct, not speech.  Paragraphs 15 and 18 prohibit conduct and speech which is "intimidating, threating, and/or coercing" and "aggressive personal encounters which disrupt classroom, departmental, and/or organizational functioning…", which cannot be said to constitute protected speech under any established law. Paragraph 23 is merely notice that failure to abide by the provisions of the LCA "shall constitute just cause for [Plaintiff's] discharge…".  The only paragraphs that can be said to address even

potentially protected speech are 8, 9, and 10, which prohibit "unfounded or untruthful derogatory statements".  Pursuant to the policies already governing Plaintiff's behavior, and by his own admission, these provisions did nothing to restrict his speech.  Complaint, paragraph 34 ("Indeed, Peterson had already been abiding by these rules in any event."); *see also* Exhibit 3, the Last Chance Agreement.

Plaintiff accepts that the University had the right to condition his continued employment on his acceptance of Dr. Hitch's recommendation, which is precisely what is reflected in the LCA.  Further, and as outlined more fully below, Plaintiff cannot show how the LCA diverged from existing University policy already governing his employment, nor how imposition of the LCA was negotiable or anything but a unilateral right of the University as an employer.  Plaintiff does not allege that the terms of the LCA or the University's request that he abide by its terms is a violation of clearly established law, nor can he show the same, and on that basis, his claim for prior restraint must be dismissed.[7]

### III.   PLAINTIFF'S THIRD CAUSE OF ACTION FOR CONSPIRACY MUST BE DISMISSED.

Plaintiff's third cause of action is for civil conspiracy to violate his rights under 42 USC § 1983.  To succeed on a claim of civil conspiracy, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants."  *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998).  "Conclusory allegations of conspiracy are

---

[7]  *See Lytle v. City of Haysville, Kan.,* 138 F.3d 857, 863–64 (10th Cir. 1998) (In balancing the employee's interest in expression against the government's interest in efficiency, a court must consider "the manner, time, and place of the employee's expression," as well as the events leading up to it. *Rankin*, 483 U.S. at 388, 107 S.Ct. at 2899. It is relevant "whether the statement impairs discipline by supervisors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes the performance of the speaker's duties or interferes with the regular operation of the enterprise." *Id.*)

insufficient to state a valid § 1983 claim.". *Id.* Like the plaintiff in *Tonkovich*, the Plaintiff here

has stated conclusory allegations against the "Defendants" generally without identifying

specifically what each Defendant did, nor identifying any facts that might show the existence of

a conspiracy. Additionally, to the extent Plaintiff has plausibly alleged a conspiracy, it was not

to terminate his employment as the only actions complained of occurred after the sanction of

termination had been rejected by the FRB and Dr. Hitch. Accordingly, Plaintiff's third cause of

action must be dismissed.

## IV.  PLAINTIFF'S FORTH CAUSE OF ACTION FOR BREACH OF CONTRACT IS NOT COGNIZABLE AGAINST THE INDIVIDUAL DEFENDANTS.

Public employees' employment rights generally spring not from contract, but from

legislative policy. *Code v. Utah Dept. of Health*, 2007 UT App. 390, ¶ 6. But, a contract in a

public employment setting may arise if the State "voluntarily undertakes an additional duty that

it would otherwise have no obligation to perform." *Utah Public Employees Ass'n v. State*, 2006

UT 9, ¶ 43 (quoting *Buckner v. Kennard*, 2004 UT 78, ¶ 34). An educational institution may

undertake a contractual obligation to observe particular termination formalities by adopting

procedures or by promulgating rules and regulations governing the employment relationship.

*Cherry v. Utah State University*, 966 P.2d 866, 869 (Utah Ct. App. 1998) (quoting *Piacitelli v.

Southern Utah State College*, 636 P.2d 1063, 1066 (Utah 1981)). Contractual obligations in

public employment arise out of procedures, rules, or regulations undertaken by the public entity

or educational institution.

Plaintiff brings his Fourth Cause of Action for Breach of Contract against all Defendants

and alleges that his breach of contract claim arises out of the undisputed fact that "DSU

maintained a policy manual."[8]  In a contract claim brought pursuant to DSU's policy manual, the individual defendants are not party to alleged contracts between Plaintiff and the University and are, therefore, not liable for any alleged breach of contract or breach of the implied covenant of good faith and fair dealing. Individual defendants are not responsible for the personnel policies of the University and are not party to the contracts contractual obligations arising therefrom. Plaintiff's Fourth Cause of Action for breach of contract based on DSU policy manual should be dismissed as to the individual defendants.

### V.      PLAINTIFF FAILS TO STATE A PLAUSIBLE CAUSE OF ACTION FOR BREACH OF CONTRACT AGAINST DSU UNDER UTAH STATE LAW.

Under Utah law, to properly state a claim for a breach of contract, a party must allege sufficient facts, which when viewed as true, satisfy each element. *Am. W. Bank Members, L.C. v. State*, 2014 UT 49, ¶¶ 15-17, 342 P.3d 224, 230–31. "The elements of a prima facie case for breach of contract are (1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *Id.* (quoting *Bair v. Axiom Design, L.L.C.,* 2001 UT 20, ¶ 14, 20 P.3d 388.)  But, beyond simply stating the elements required to show a prima facie case for breach of contract, a breach of contract claim must include allegations of when the contract was entered into by the parties, the essential terms of the contract at issue, and the nature of the defendant's breach. *Id.* (citing Utah R. Civ. P., Forms 4 & 5.) These essential elements are required to fulfill the requirements of a "short and plain" statement under Utah pleading standards. *Id.*

---

[8] Plaintiff's Complaint, Doc. 3, ¶¶ 84-86

Plaintiff's Complaint fails to meet the essential pleading requirements to properly state a breach of contract claim against DSU under Utah state law. Even allowing Plaintiff's allegations all the benefit of truthfulness, the allegations in the Complaint do not support a claim of breach of contract or the implied covenant of good faith and fair dealing.

### A.   Plaintiff fails to meet the pleading standard by failing to allege what essential term Defendant DSU breached under DSU's policy manual.

There is no dispute that DSU "maintained a policy manual," nor that the "policy manual identifies the duties, rights, responsibilities, and obligations" between Plaintiff and DSU with regard to Plaintiff's employment.[9] The Complaint clearly states that the "policy manual, and the parties' reliance on the same, establishes a contract enforceable by law."[10] That means that under Utah law, Plaintiff has identified DSU's policy manual as the contract at issue, so Plaintiff must also allege what essential terms of the policy manual are at issue and the nature of Defendant DSU's breach of those essential terms.

Plaintiff alleges that Defendant violated Policy 371, "which sets out the bases for which a tenured professor may be dismissed for cause."[11] Under DSU's Policy 371, the final decision as to termination shall be made by the President of the University.[12] But because the President was a subject to some of Plaintiff's criticisms, Dr. Hitch, Associate Commissioner for Academic and Student Affairs for the Utah System of Higher Education made the final decision as to termination.[13] Plaintiff was willing to acquiesce to Dr. Hitch's decision.[14] So, even under

---

[9] Plaintiff's Complaint, Doc. 3, ¶¶ 84-85.
[10] Plaintiff's Complaint, Doc. 3, ¶ 86.
[11] Plaintiff's Complaint, Doc. 3, ¶¶ 22 and 89.
[12] Plaintiff's Complaint, Doc. 3, ¶ 30.
[13] Plaintiff's Complaint, Doc. 3, ¶ 31.
[14] Plaintiff's Complaint, Doc. 3, ¶ 34.

Plaintiff's allegations, Plaintiff had agreed that Dr. Hitch would make the final determination regarding termination and to abide by Dr. Hitch's determination.

There is also no dispute that, in lieu of termination, Dr. Hitch issued disciplinary action, including a provision stating that "the University shall issue a 'final chance' letter outlining the expectations of his employment and consequences of similar policy violations in the future, up to and including termination."[15] Dr. Hitch identifies the "final chance" letter as a disciplinary action and gives Defendant DSU the authority to impose the "expectations of [Plaintiff's] employment and consequences of similar policy violations in the future, up to and including termination."[16] Nothing in Dr. Hitch's final determination requires Defendant DSU to negotiate the terms of the "final chance" document with Plaintiff. Rather, Dr. Hitch's final determination grants Defendant DSU the authority to impose expectations on Plaintiff's employment and outline consequences for continued violation of policy. Whether the document is titled as a "letter" or an "agreement," Defendant DSU had the authority to impose expectations and consequences on Plaintiff's employment pursuant to Dr. Hitch's final determination.

So, it was required under Dr. Hitch's final determination that Plaintiff be provided with the document identified as "Last Chance Agreement."[17] Plaintiff's allegation that Defendant DSU breached Policy 371 by "disregarding the conclusion of Dr. Hitch and imposing the LCA as a condition of continued employment" is conclusory and not supported by the documentation. The allegation that "Dr. Hitch's determination, pursuant to the terms of the DSU Faculty

---

[15] Plaintiff's Complaint, Doc. 3, ¶ 33; Independent Review of the Notice of Termination of Appointment of Dr. Ken Peterson From Dixie State University, dated July 10, 2018, p. 6
[16] Independent Review of the Notice of Termination of Appointment of Dr. Ken Peterson From Dixie State University, dated July 10, 2018, p. 6
[17] Plaintiff's Complaint, Doc. 3, ¶ 35.

Manual, should have constituted the final action with respect to the March 2 Notice of Termination,"[18] does not support a claim of breach of contract. Dr. Hitch's determination was the final action in Plaintiff's termination procedures, and Defendant DSU complied with the requirements of Dr. Hitch's determination by providing Plaintiff with a document imposing expectations of employment and outlining consequences of future policy violations. Therefore, Plaintiff has failed to adequately allege a breach by Defendant DSU of an essential term of either Dr. Hitch's determination or Policy 371. Plaintiff has not met the pleading standards to state a claim of breach of contract under Utah law.

###   B.   Plaintiff fails to meet the pleading standard by failing to allege sufficient facts showing performance by Plaintiff.

Performance by the party seeking recovery under a contract is an essential element of a breach of contract claim under Utah law. *Am. W. Bank Members*, 2014 UT 49, ¶¶ 15-17, 342 P.3d at 230–31. Plaintiff is required to plead sufficient facts, which viewed as true, show each of the essential elements of a breach of contract claim. *Id.* Conclusory statements of the elements are not facts and are insufficient to meet Plaintiff's pleading burden.

Plaintiff alleges no facts to show performance by Plaintiff. Plaintiff merely states that he "behaved in compliance with the Policy Manual."[19] Such an allegation is conclusory and not entitled to be viewed as truthful. Particularly, when Dr. Hitch's determination found that "DSU has lost confidence in [Plaintiff's] ability to follow DSU policy."[20] And Plaintiff's allegations provide no facts supporting performance under policy or Dr. Hitch's determination.

---

[18] Plaintiff's Complaint, Doc. 3, ¶ 41.
[19] Plaintiff's Complaint, Doc. 3, ¶ 88.
[20] Independent Review of the Notice of Termination of Appointment of Dr. Ken Peterson From Dixie State University, dated July 10, 2018, p. 6

To the contrary, Plaintiff's allegations show that DSU did not terminate Plaintiff's employment until after Plaintiff failed to return to work at the beginning of the school year. Plaintiff alleges that he "discovered" in August of 2018 that his employment had been terminated only after he received notification that his son was no longer eligible for a tuition waiver as the child of a faculty member."[21] For the academic school year of 2018-2019, faculty was required to return to work on August 13, 2018.[22] Classes started for students on August 20, 2018.[23] Tuition bills were due on August 20, 2018. Plaintiff, as a faculty member, was required to return to work on August 13, 2018 and his teaching responsibilities would have started by at least August 20, 2018. But Plaintiff alleges that he was unaware that he had been terminated until August 20, 2018. Plaintiff does not allege that he was working or teaching when he "discovered" that his employment was terminated. Plaintiff has provided no facts sufficient to allege that he was performing his job duties under policy or Dr. Hitch's determination when his employment was terminated. In fact, the reasonable inference under Plaintiff's allegations, is that Plaintiff had not returned to work and was not performing under the alleged contract. Plaintiff fails to allege facts sufficient to show performance under the contract and so fails to meet the pleading standard for a claim of breach of contract under Utah law.

### C.    Plaintiff fails to meet the pleading standards for a claim of Breach of the Implied Covenant of Good Faith and Fair Dealing

A claim for breach of the implied covenant of good faith and fair dealing is a derivative of the breach of contract claim. *Am. W. Bank Members*, 2014 UT 49, ¶ 19, 342 P.3d at 230–31.

---

[21] Plaintiff's Complaint, Doc. 3, ¶ 42.
[22] Dixie State University Academic Calendar Fall 2018
[23] Dixie State University Academic Calendar Fall 2018

Failure to show the facts required to meet a breach of contract claim, is also a failure to show a breach of the implied covenant of good faith and fair dealing. *Id.*

For all of these reasons, Plaintiff has not stated a plausible claim of breach of contract under Utah law and the Fourth Cause of Action should be dismissed.

### VI. UNDER UTAH LAW, DEFENDANT ARE ENTITLED TO IMMUNITY FROM PLAINTIFF'S FIFTH CAUSE OF ACTION FOR WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY.

Federal courts have found that the Utah Governmental Immunity Act (UGIA) immunizes DSU from state-law tort claims not expressly waived. *See Hyland v. Dixie State Univ.,* No. 2:15-CV-36 TS, 2015 WL 4635466, at *1–2 (D. Utah Aug. 3, 2015). The Supreme Court of the State of Utah has held that claims of termination of employment "for a reason that contravenes a clear and substantial public policy gives rise to a cause of action in tort." *Conner v. Dep't of Commerce*, 2019 UT App 91, ¶ 17, 443 P.3d 1250, 156 (quoting *Hansen v. America Online, Inc.*, 2004 UT 62, ¶ 7, 96 P.3d 950). Generally, to determine whether a governmental entity is immune from suit under the Utah Governmental Immunity Act (UGIA), Utah courts apply a three-part test, which assesses (1) whether the activity undertaken is a governmental function; (2) whether governmental immunity was waived for the particular activity; and (3) whether there is an exception to that waiver. *Conner v. Dep't of Commerce*, 2019 UT App 91, ¶ 17, 443 P.3d 1250, 156 (citing *Van de Grift v. State*, 2013 UT 11, ¶ 8, 299 P.3d 1043)

With regard to the first element, federal district courts have previously found that DSU is an arm of the State of Utah and its operation as a state university is a governmental function. *See Hyland v. Dixie State Univ.,* No. 2:15-CV-36 TS, 2015 WL 4635466, at *1–2 (D. Utah Aug. 3, 2015) (citing Utah Code Ann. § 63G-7-101 *et seq.*). If Plaintiff's allegation is that DSU's

behavior is unconstitutional and does not constitute a "government function," it is established law in Utah that the UGIA provides immunity for "all functions of government, no matter how labeled." *McCubbin v. Weber Cty.*, No. 1:15-CV-132, 2017 WL 3394593, at *24 (D. Utah Aug. 7, 2017) (citing Utah Code Ann. § 63G-7-101(2)(a)). The UGIA defines a "government function" as "each activity, undertaking, or operation of a governmental entity," including "each activity, undertaking, or operation performed by a department, agency, employee, agent, or officer of a governmental entity" and "a governmental entity's failure to act." *Id.* (citing Utah Code Ann. § 63G-7-101(5)(a)–(c)). That means that simply labeling the behavior in constitutional terms does not alter whether the behavior is a "governmental function." Therefore, the first element is met. DSU and its employees were engaged in a government function. *See Hyland v. Dixie State Univ.,* No. 2:15-CV-36 TS, 2015 WL 4635466, at *1–2 (D. Utah Aug. 3, 2015).

The UGIA does not waive immunity for the tort of wrongful termination. *Conner*, 2019 UT App 91, ¶ 18 (citing *Broadbent v. B'rd of Educ. of Cache Cnty School Dist.,* 910 P.2d 1274, 1277 (Utah Ct. App. 1996)); *see also* Utah Code Ann. § 63G-7-101 *et seq.* The Tenth Circuit has stated, "A state's waiver is subject to a stringent test: Utah's consent to suit against it in court must be express and unequivocal." *V–1 Oil Co. v. Utah State Dep't of Pub. Safety*, 131 F.3d 1415, 1421 (10th Cir.1997). Utah has not expressly or unequivocally waived its immunity for tort claims of wrongful termination. Plaintiff cannot meet the requirements of the second element. There is no need to look for an exception under the third element.  DSU is immune from state-law wrongful termination claims and Plaintiff's Fifth Cause of Action should be dismissed.

RESPECTFULLY SUBMITED THIS 15th day of November , 2019.

SEAN D. REYES
Utah Attorney General


/s/ *Daniel R. Widdison*
DANIEL R. WIDDISON
Assistant Utah Attorney General
*Attorney for Defendant*

**CERTIFICATE OF MAILING**

I certify that on this 15th day of November, 2019, I served the foregoing **MOTION TO DISMISS** on the following by using the Court's electronic filing system. I also certify that a true and correct copy of the foregoing was placed in outgoing, United States mail, postage prepaid, to the following:

>   Benjamin K. Lusty
>   Jaryl L. Rencher
>   RENCHER ANJEWIERDEN
>   460 South 400 East
>   Salt Lake City, UT 84111
>   ben@lawfirmra.com
>   rencher@lawfirmra.com

/s/ *Sheri Bintz*

27