# EXHIBIT 1

**Independent Review**
**of the Notice of Termination of Appointment of**
**Dr. Ken Peterson from Dixie State University**

July 10, 2018

**Contents:**

I.      Description of Request for Review and Report
II.     Reviewer Credentials
III.    Materials Reviewed
IV.     Findings
V.      Conclusions

**I.      Description of Request for Review and Report**

Utah System of Higher Education (USHE) Commissioner David L. Buhler asked if I would serve as an independent reviewer in case(s) involving faculty termination at Dixie State University and I affirmed I would.  Directions from USHE in-house legal counsel were as follows:

 ". . . your job is to review the record (all the documents) and the arguments and to determine whether you want to adopt the faculty committee's recommendation or whether you want to adopt a different outcome, such a discharge, suspension, demotion or other.

You come to this conclusion by reviewing the evidence and comparing it to the policies to determine if the faculty member violated those policies and if so whether the violation warrants discharge or other disciplinary action."

**II.      My Credentials**

Degrees

        Ph.D., Educational Psychology, The University of Michigan, 1980
        B.S. and M.A., Family Ecology, Michigan State University, 1971/1972

Selected For and Completed:

        Institute for Educational Management (IEM)
                Graduate School of Education
                Harvard University, Summer 2006

Professional Biography

- Associate Commissioner for Academic and Student Affairs in the Utah System of Higher Education from July 2010 to the present.
- Vice President for Academic Affairs at Utah Valley University (2007-10), and served as Interim President at UVU in 2008-09.
- Provost and Vice Chancellor for Academic Affairs and Professor at the University of Wisconsin-La Crosse (2002-07), and was Interim Chancellor for eight months.

- Dean of the College of Education and Professional Studies at Eastern Illinois University (1995-2002)
- Faculty member, becoming tenured full professor and administrator at Central Michigan University (1981-1995)
- Instructional designer at Wayne State University (1971-72) and the University of Michigan (1972-81)

### III.    Materials Reviewed

- Notebook 1:  Titled "Dixie State University, Ken Peterson, Statement of Just Cause and Exhibits"
- Notebook 2:  Titled "Dixie State University, Ken Peterson, Faculty Review Board Hearing on the Termination of Appointment of Dr. Ken Peterson:  Statement of Dr. Peterson and Exhibits"
- Audio recording of the Kate Dalley radio show referenced in the materials (thumb drive).
- Transcript of the audio recording of the Faculty Review Board Hearing (10/29/18)
- Letter regarding Faculty Review Board recommendation to Dr. Ken Peterson of 6/21/18 signed by Dr. Munir Mahmud, Chair, Faculty Review Board (cc:  Doajo D Hicks, J.D., General Counsel, Dixie State University; Lynn Joseph, Civil Rights Compliance Manager and Investigator, DSU)

### IV.    Findings

I report below on the charges against Dr. Ken Peterson identified in the Notice of Termination letter referenced above for which there was a preponderance of evidence to support the charge.  I have not reported herein on charges for which I did not find a preponderance of evidence to support the charge.

1.  **Violation of Professional Standards of Behavior**

    ***DSU Policy 633, Faculty Rights and Responsibilities***
    ***Section 4.4.3.2.4***

    "Demonstrate professional standards of behavior, including collegiality and the open exchange of ideas through civil discourse."

    And ***Section 4.4.3.2.5***

    "Strive to achieve the purpose of the University when serving in administrative posts or on committees, with due consideration for other persons involved."

    **Evidence:**
    - Dr. Peterson demonstrated unprofessional standards of behavior and considerable lack of good judgment when speaking with a student and a staff member of the university about his views of the behaviors of individual faculty members (Houser and Davenport), faculty groups (Music and Theatre Departments),  and administrators of the University, including its president (Student and Picklesimer Witness Affidavits).
    - Dr. Peterson demonstrated unprofessional standards of behavior as evidenced by interactions with third parties and lack of "due consideration for other persons involved" (affirmed by Peterson that he had made remarks to this effect during the Faculty Review Board Hearing):

. . . told third parties that Houser is "destroying" the Theatre Department,
. . . told third parties…that Houser  and President Williams were "corrupt" and had 'conspired together against Varlo Davenport' by sending "secret correspondence" to have Varlo Davenport terminated so that Houser could get tenure and promotion.
. . .told third parties that Houser and Williams had worked together "as part of a big conspiracy" to escalate the student complaint of Davenport "to get rid of Davenport."

and

- Dr. Peterson demonstrated unprofessional behavior and treated Houser in an unprofessional and uncivil manner on many occasions, including a hallway interaction where Peterson responded to a civil greeting from Houser with the words "Fuck you."

## 2. Refusal to Meet His/Her Responsibilities to the University/Serious Misconduct or Unethical Behavior/Serious Violation of University Rules and Regulations

### DSU Policy 372, Faculty Termination

4.1  Dismissal for cause may be imposed on a faculty member in the following circumstances:
   4.1.1   Professional incompetence as defined in DSU Policy 633:  Faculty Rights and Responsibilities
   **4.1.2   Unwillingness or refusal to meet his/her responsibilities to the University**
   **4.1.3   Serious misconduct or unethical behavior.**
   **4.1.4   Serious violation of University rules and regulations.\***

   **\*Bold indicates relevant sections reported on below.**

As found in DSU Policy 371 (Faculty Termination), Section 4.4.12.:

". . .the burden of proof rests with the institution, and shall be by a preponderance of information and satisfied only by information in the record considered as a whole."  There are four pieces of evidence described below that comprise the information in the record I considered relative to whether Dixie State University could impose on Dr. Peterson "dismissal for cause" as defined in DSU Policy 372 (Faculty Termination), sections 4.1.2., 4.1.3, and 4.1.4 as follows:

**Evidence (1):**
Dr. Peterson repeated on many occasions and to many people, both employees of the university and not, derogatory and potentially slanderous statements about President Williams and DSU administration that appear to have impacted the institution negatively (e.g. *Salt Lake Tribune* report, Taylor Stevens, updated 9/17/18, and public comment on same).  While Dr. Peterson may speak about the university in a public forum, and even to criticize the university and its policies, they must be truthful statements and not unfounded and spurious accusations.

Per Ken Peterson's post-hearing statement (p. 2), "I have implied that president Williams and Mark Houser were indeed complicit in the wrongful termination of Varlo Davenport.  The source for my information is the 70-page Complaint filed in the U.S. District Court in the Davenport Civil Rights Case."  The complaint is not a definitive and verified source of information (referred to by Peterson as "the truth") and cannot be used as such.  The Complaint contains the allegations of the complainant (Davenport) in the civil action brought by Varlo Davenport against Dixie State University.  Claims by Peterson that he has only been reporting "the truth" are not supported when

the source for "the truth" is a Complainant's *claim* (unverified).  Dr. Peterson may claim that the acquittal of Varlo Davenport in a criminal case makes Davenport's claims in the civil case "the truth." I disagree.

Further, Dr. Peterson's statements have negatively affected the institution's reputation (as seen in numerous comments from the public who either heard or saw the reports through public media sources).  There are references in the materials to negative effects on student enrollments in the music and theatre programs and Dixie State University itself, and, while there was no evidence in the materials provided to support the supposition of DSU enrollment downturns, it is plausible there have been such effects.  (See Evidence 2 below.)  Whether enrollments have been affected or not, actively working to discredit the institution in the manner that he did represents a failure to meet his/her responsibilities to the university, unethical behavior, and misconduct.

**Evidence (2):**
Dr. Peterson actively discouraged the collaboration between the Music and Theatre Departments (supported by Student Witness and Picklesimer affidavits).  These actions demonstrate not only unprofessional behavior on Dr. Peterson's part but an unwillingness to meet his responsibilities as a faculty member in continuing learning opportunities DSU students had previously found valuable in reaching their educational goals.

Clearly, Dr. Peterson believed Mr. Houser to be inept and responsible for the lack of quality of joint Music/Theatre productions, and particularly the performance of *The Man of LaMancha*.  However, actively discouraging intra-departmental collaborations is neither a professional nor effective way to resolve this problem and still meet university obligations to provide students the best possible educational experiences.

**Evidence (3):**
Dr. Peterson told untruths on the public radio program "Kate Dalley Show" (3/12/18).  While Dr. Peterson has every right to speak publicly about his treatment by the University, he does not have the right to lie about the facts. During the interview:

- Peterson indicated accusations used in support of his termination notice were based on hearsay and from anonymous witnesses and because they were hearsay, were not true.  Signed affidavits of direct conversations with Peterson are not "hearsay."

- Peterson claimed that he had never had any disciplinary action taken against him at Dixie State University up until that point.  This claim was found to be untrue as verified by warning letter of 2/6/06 contained in his personnel file.  A warning/notice of corrective action is the first step in a disciplinary action per Dixie State University Policy 372 (Corrective and Disciplinary Action) which has been in effect since 1995.  I noted that the warning letter was signed, not by his department chair or dean, but by then-Vice President of Academic Services, Donna Dillingham-Evans, which means the concern had risen to the vice presidential level in the university.

**Evidence (4):**
Dr. Peterson lied to the investigator when asked whether he had revealed "any information" about Houser, ". . . his employment with the theater department, and any information. . .or anyone you discussed it with who was not part of the tenure review committee."

From the 2/8/18 interview transcript (Investigator/Ken Peterson):
Investigator:  ". . .did you reveal any information to anyone not on the tenure review committee. . ."
followed by ". . .did you talk about Mark Houser's employment, tenure, uh, promotion
possibilities?"
Peterson:  "No."
Investigator:  "And his performance in the. . .theatre department?"
Peterson:  "No."
Investigator:  "To anyone.  Yes?  No?
Peterson:  "No."

Peterson did affirm in the Faculty Review Board hearing that he had talked with others about Mark
Houser's employment and performance in his role.  He also said, "What I told the investigator (on
February 8, 2018) in response to many of her questions was that I did not say the words that were
attributed to me.  My responses were correct, not false"  (p. 10 of Post-hearing response of
Peterson).  As noted in the transcript of the 2/8/18 interview above, Peterson was not asked
whether he said those "exact words," but whether he ". . .reveal(ed) any information."  A lie which
can be verified in an audio recording (investigator interview of Dr. Peterson) cannot be explained
away by inaccurate characterizations of the lie.  The lying and reinterpretations of the lying
constitute misconduct and unethical behavior.

## V.  Conclusions

I have examined the statements of cause for termination of Dr. Ken Peterson and included in this
report the ones for which I have found a preponderance of evidence, and have cited the evidence I
considered persuasive.  In sum, there is evidence that Dr. Peterson, as claimed by the University,
acted in violation of:

***DSU Policy 633, Faculty Rights and Responsibilities, Section 4.4.3.2.2*** (Abide by policies), ***4.4.3.2.4***
(Exhibit professional standards of behavior/civil discourse), and ***4.4.3.2.5*** (Strive to achieve the
purposes of the university, with due consideration for others involved).

***DSU Policy 372, Faculty Termination, 4.2.3., 4.2.4***

4.2  Dismissal for cause may be imposed on a faculty member in the following circumstances:
    4.2.1    Professional incompetence as defined in DSU Policy 633:  Faculty Rights and
            Responsibilities
    **4.2.2**    **Unwillingness or refusal to meet his/her responsibilities to the University**
    **4.2.3**    **Serious misconduct or unethical behavior.**
    **4.2.4**    **Serious violation of University rules and regulations.\***
             **\*Bold indicating relevant causes as judged by the reviewer.**

In his written statement to the Faculty Review Board (p. 23 of 23), Dr. Peterson states:  "I ask this
Review Board not be part of the continuation of the Administration's errors and to judge mine for what
they it (*sic*) truly was (*sic*), an indiscretion and nothing more."  I disagree with Dr. Peterson's
characterization of his actions, when taken as a whole, as indiscrete and not serious wrongdoing.

The Faculty Review Board found ". . .that the university counsel failed to provide a preponderance of
information to satisfy the burden of proof in support of its accusations against Dr. Ken Peterson."

The charges brought against Dr. Peterson were many and varied in their seriousness.  While the University Counsel did not provide a preponderance of evidence on every charge, there was a preponderance of evidence to support several of the most serious charges.  However, the condition of "preponderance of information" to support the **termination** of Dr. Ken Peterson is **not** satisfied.

The Faculty Review Board recommends Dr. Peterson be ". . .warned either verbally or given a written notice to not engage in any unprofessional comments about the university or its administration. . ." and that ". . .he should definitely not be terminated from a tenured position just because of the one problem. . ."   I respectfully but strongly disagree that there is "one problem," and that a warning alone is not the level of discipline appropriate to the substantiated charges.  I note the following from the "Respondent's Summary of Faculty Review Board Hearing:"

 "Based on Peterson's actions, DSU has lost confidence in Dr. Peterson's ability to follow DSU policy, maintain confidentiality, perform his official duties at the University with the best interest of the school, fellow employees, and students in mind.  While Dr. Peterson has a right to speak publicly about DSU if he chooses, the University is not required to employ anyone who is affecting or potentially affecting DSU's operation and services."

It appears that Dr. Peterson believes he is justified in all of his actions and is not contrite in any way for his "indiscretion" (quote from his own written statement to the Faculty Review Board).  It appears his disappointment, anger, and frustration regarding the university's termination of Varlo Davenport has clouded his judgment regarding what constitutes professional performance of his employment responsibilities as required by DSU policies.  Whatever the reasons, he has acted in an extremely unprofessional and uncivil way and in violation of DSU policies and not in the best interests of the University and should be penalized for that past behavior.  Further, going forward, Dr. Peterson needs to cease unprofessional behaviors, many of which affect DSU's operations and services and are to the detriment of his fellow faculty, the staff, and, most regrettably, the students in their efforts to achieve their educational goals.

Based on my review described herein and the preponderance of evidence to support several (although not all) of the serious charges of the University against him, I issue the following disciplinary action:

Dr. Ken Peterson is suspended from his tenured professor position in the Music Department at Dixie State University without pay for 10 work days and reinstated in his tenured faculty position in the Department of Music at the conclusion of the suspension.  At the time of his reinstatement, the University shall issue a "final chance" letter outlining the expectations of his employment and consequences of similar policy violations in the future, up to and including termination.

Moving forward in his ongoing employment, Dr. Ken Peterson shall not make unfounded derogatory statements about Dixie State University and its faculty, staff, students or administration.  Additionally, he shall not discuss faculty matters with students and third parties, which would include the circumstances and details of Dr. Peterson's suspension and subsequent reinstatement.

It is my opinion that the sanctions I have outlined will cause Dr. Peterson to behave in a professional manner and return to being a productive and effective tenured faculty member of the Music Department and employee of Dixie State University.

It is my sincere hope that this conclusion will settle this case in such a way that Dr. Peterson and Dixie State University can spend their time and efforts more productively on meeting the university mission:

"Dixie State University is a public comprehensive university dedicated to rigorous learning and the enrichment of the professional and personal lives of its students and community by providing opportunities that engage the unique Southern Utah environment and resources."

Respectfully submitted by:

Dr. Elizabeth J. Hitch
Associate Commissioner for Academic and Student Affairs
Utah System of Higher Education