# LAST CHANCE AGREEMENT

This Agreement is entered into by and among Dixie State University (DSU) and Dr. Ken Peterson (Dr. Peterson), hereafter referred to as "*Parties*," and shall be considered as a "Last Chance Agreement," with the Parties agreeing hereto that any violation by Dr. Peterson of DSU's policies, and any terms expressed below after the execution of this Agreement shall result in his immediate termination of employment from DSU subject to the provisions of this Last Chance Agreement. This Agreement updates and amends the July 1, 2009 Tenure Agreement between Dr. Peterson and DSU.

This Last Chance Agreement incorporates the required terms and areas of concern identified in the Utah System of Higher Education's (USHE) *Independent Review of the Notice of Termination of Appointment of Dr. Peterson from Dixie State University* letter dated July 10, 2018. The terms of this Agreement are final and nonnegotiable.

The USHE mandated ten (10) day suspension without pay shall commence August 1, 2018 through August 15, 2018.

In consideration of the covenants and agreements set forth herein, the adequacy and sufficiency of which are hereby acknowledged as follows:

1. In order for Dr. Peterson to continue his employment with DSU and be eligible to teach during DSU's Fall 2018 session and thereafter, Dr. Peterson shall abide by the terms of this Last Chance Agreement;

2. Dr. Peterson has demonstrated unprofessional/uncivil behavior towards DSU and its faculty, staff, and administration. Dr. Peterson has also displayed inappropriate behavior towards DSU students. DSU has lost confidence in Dr. Peterson's ability to act professionally and appropriately, in unsupervised or secluded areas; therefore, Dr. Peterson will be assigned a 12-credit course load of General Education courses and 3-Service credits per semester, which amounts to a 24-credit course load of General Education courses and a 6-Service credit course load per year;

3. Dr. Peterson's Service credit requirements are as follows: Dr. Peterson shall be responsible for coordination of all of the Music Department's General Education classes as follows:

    a. Ensure that the course syllabus and course materials are current and meet all university requirements and expectations.
    b. Ensure that student-learning outcomes are appropriate, assessment of those student-learning outcomes are conducted and data from the assessments is organized, analyzed, and presented on a regular basis.
    c. Collaborate with the Music Department Chair in the selection and instructional support of all faculty teaching Music General Education Courses.

    d. Work with the Music Department Chair to offer an appropriate schedule of course sections each semester.
    e. Maintain accountability to the University General Education Committee for all matters related to the Music Department's General Education courses.
    f. Conduct one peer evaluation each semester of each faculty member teaching Department of Music General Education courses.
    g. Ensure the overall teaching effectiveness of all Department of Music General Education instructors and the quality of student learning.

The Dean of the College of the Arts may redefine and/or change Dr. Peterson's service credit requirements as reasonably needed;

4. Dr. Peterson will not provide private or digital lessons on DSU property or facilities, nor shall Dr. Peterson actively recruit/advertise private lessons and/or any other private business with DSU students while on DSU property, facilities, or during any DSU sponsored event;

5. Dr. Peterson shall not engage in any conduct that will damage, undermine, or sabotage DSU's Voice, Music, Theater, Art, and Dance programs or faculty;

6. Based on Dr. Peterson's actions, DSU has lost confidence in Dr. Peterson's ability to follow DSU policy, maintain confidentiality, and perform his official duties at the University with the best interest of the school, fellow employees, and students in mind. Due to the aforementioned loss of confidence, Dr. Peterson is excluded from all disciplinary, tenure and promotion committees, including but not limited to the following: faculty review boards, search committees and the selection process for department chairs, associate deans, or any retention decisions for chairs, deans, or associate deans;

7. Further, Dr. Peterson is precluded from having access to any DSU personnel information in any form or context by way of his position at DSU;

8. Dr. Peterson shall not make unfounded or untruthful derogatory statements about Dixie State University and its faculty, staff, students or administration.  Additionally, he shall not discuss non-public DSU business or DSU employment matters that would be considered private, protected, or controlled under the Utah Government Records Access and Management Act (GRAMA) with students or other third parties. The content of this Last Chance Agreement, including the circumstances and details of Dr. Peterson's suspension and subsequent reinstatement are to be treated as confidential information and not disseminated to third parties;

9. Dr. Peterson shall not utilize social media to make unfounded derogatory or untruthful statements about Dixie State University and its faculty, staff, students or administration.  Additionally, he shall not share and/or discuss non-public DSU business or DSU employment matters that would be considered private, protected, or controlled under GRAMA on social media. He shall not share and/or discuss the

content of this Last Chance Agreement including the circumstances and details of Dr. Peterson's suspension and subsequent reinstatement;

10. Dr. Peterson shall not utilize a proxy to make unfounded or untruthful derogatory statements about DSU and its faculty, staff, students or administration. Additionally, Dr. Peterson shall not use a proxy to share and/or discuss DSU business or employment matters that would be considered private, protected, or controlled under GRAMA on social media. He shall not utilize a proxy to share and/or discuss the content of this Last Chance Agreement including the circumstances and details of Dr. Peterson's suspension and subsequent reinstatement;

11. Dr. Peterson shall not use any devices to take or transmit pictures and/or photographs of students, faculty, staff, or administration without their express permission;

12. Dr. Peterson shall cease unprofessional behaviors, many of which affect DSU's operations and services and are to the detriment of his fellow faculty, the staff, and, most regrettably, the students in their efforts to achieve their educational goals;

13. Dr. Peterson shall not knowingly and intentionally take any action that will result in physically being closer than five hundred (500) feet of Mark Houser and Mark Houser's Family members (Hereafter collectively referred to as "Houser") while on or in any of DSU's campuses or facilities. The Parties acknowledge and agree that it shall not be a violation of this provision if Dr. Peterson incidentally, inadvertently and/or unintentionally takes action that places him closer than five hundred (500) feet from Houser while on or in any of DSU's campuses or facilities or if Houser takes action that results in Dr. Peterson being closer than five hundred (500) feet from Houser on or in any of DSU's campuses or facilities. The Parties further agree that this provision has no application to situations where Dr. Peterson and Houser are together in a group setting where Dr. Peterson and Houser are appropriately present;

14. In the event Dr. Peterson should encounter Houser while on or in any of DSU's campuses or facilities, Dr. Peterson shall not interact in any way with Houser, and shall extricate himself from such encounter. The Parties acknowledge and agree that this provision has no application to situations where Dr. Peterson and Houser are together in a group setting where Dr. Peterson and Houser are appropriately present;

15. Dr. Peterson shall not engage in any intimidating, threatening, and/or coercing conduct or speech with Houser or any faculty member, staff, administration, or any student on or in any of DSU's campuses or facilities in a manner that results in an objectively hostile work or educational environment;

16. Dr. Peterson shall not utilize any form of electronic communication or social media to slander, defame, intimidate, threaten or coerce Houser or any other DSU faculty, staff, or administration, or student in a manner that results in an objectively hostile work or educational environment;

17. Dr. Peterson shall not engage in any inappropriate physical conduct including, but not limited to intimidating, threatening, and/or coercing conduct with Houser, or any other DSU faculty, staff, administration, in a manner that results in an objectively hostile work or educational environment;

18. Dr. Peterson shall not engage in any aggressive interpersonal encounters which disrupt classroom, departmental and/or organizational functioning; Dr. Peterson shall refrain from such behavior construed as being unprofessional and uncivil to DSU's faculty, students, administration characterized by:

    a. Verbal, written, and/or physical diatribes that would cast himself or DSU in an unfavorable light in the view of the communities served by DSU;

    b. Harsh, foul or coarse language used to insult others;

    c. Physically aggressive interpersonal encounters or conduct which disrupt classroom, departmental and/or organizational functioning;

19. Dr. Peterson shall not violate any federal and/or state non-discrimination laws, including Title VII of the Civil Rights Act of 1964 (Title VII) and Title IX of the Education Amendments Act of 1972 (Title IX), which respectively prohibit racial and sexual discrimination in an educational program or activity. Nor shall Dr. Peterson violate any DSU Policy;

20. Dr. Peterson understands that in an effort to assist him in making the necessary performance improvements, his work will be monitored and supervised by the Dean of the College of Arts and he will accept such monitoring and supervision as a necessary part of his continued employment. Dr. Peterson shall report directly to Dean of the College of Arts; however, the department chair or the dean's appointee may direct Dr. Peterson to undertake an immediate task without the Dean's approval as necessary;

21. Dr. Peterson acknowledges and agrees that the integrity of the faculty-student relationship is the foundation of DSU's educational mission, (i) and that this relationship vests considerable trust in the faculty member, who, in turn, bears authority and accountability as an educator; and (ii) the relationship between faculty member and student must be protected from influences or activities that can interfere with learning consistent with the goals and ideals of DSU;

22. Dr. Peterson understands that if he fails to meet the conditions of this Agreement, he will be terminated from employment.  Meeting the conditions as used in the previous sentence, means that Dr. Peterson will demonstrate continued and sustained improvement in the areas of concern addressed herein and that he will comply with all the performance and conduct standards expected of all DSU's employees;

23. Dr. Peterson acknowledges and agrees that if he engages in any conduct prohibited by this Last Chance Agreement or fails to comply with any conditions required by this Last Chance Agreement, then (i) DSU's Human Resource Department and Office of the General Counsel will promptly investigate any claim of conduct that is prohibited by this Last Chance Agreement when DSU becomes aware of the alleged conduct, and (ii) any substantiated claim of prohibited conduct shall constitute just cause for his discharge from employment at DSU; and (iii) DSU shall immediately move for the termination of Dr. Peterson pursuant DSU Policy 371: Faculty Termination.

24. The Parties specifically acknowledge and agree that Dr. Peterson retains all rights afforded him under the United States' Constitution, Utah Constitution, and federal or state law. Further, Dr. Peterson retains any and all rights he possesses under federal or state law to contest any termination or other discipline imposed under the terms of this Agreement;

25. Dr. Peterson understands that this Agreement is not a contract or guarantee of continued employment for any specified period of time;

26. This Last Chance Agreement is not precedent setting and may not be cited as precedence or referenced in future disciplinary matters for anyone other than Dr. Peterson;

27. Dr. Peterson acknowledges and agrees that he enters into this Last Chance Agreement knowingly and voluntarily;

28. Dr. Peterson understands and acknowledges that he has been afforded sufficient time to consider this Agreement, has been encouraged by DSU to consult with legal counsel of his choice concerning the terms hereof before executing this Agreement and that signing this Agreement was of his own free will and with the benefit of representation, if so desired; this Agreement shall be valid and binding from the date of its signing throughout the remainder of Dr. Peterson's employment with DSU.

IN WITNESS WHEREOF, the Parties hereto have duly executed this Agreement the _____ day of July, 2018.

DR. KEN PETERSON

_____
Dr. Ken Peterson
*Professor of Music*

DIXIE STATE UNIVERSITY

Dr. Michael Lacourse
*VP Academic Affairs & Provost*