IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| KEN PETERSON, an individual,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD WILLIAMS, in his individual & official capacity, DOAJO HICKS, in his individual and official capacity; MICHAEL LACOURSE, in his individual and official capacity; LYNN JOSEPH, in her individual and official capacity; DIXIE STATE UNIVERSITY, a public collect of the State of Utah; JOHN DOES I-X, in their individual and official capacities; and ROE ENTITIES I-X,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>4:19-cv-00062-DB-PK<br><br>Judge Dee Benson<br><br>Magistrate Judge Paul Kohler |

Before the court is Defendants' Motion to Dismiss. (Dkt. No. 15.) The motion has been fully briefed by the parties, and the court has considered the facts and arguments set forth in those filings. Pursuant to civil rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the court elects to determine the motion on the basis of the written memoranda and finds that oral argument would not be helpful or necessary. DUCivR 7-1(f).

BACKGROUND

At all times relevant to this matter, Plaintiff Ken Peterson was employed at Dixie State University ("DSU") as a professor of music. (Dkt. No. 3, ¶¶ 6, 12.) As a tenured professor, Mr. Peterson enjoyed the privileges at DSU of academic freedom, faculty rights, due process and peer judgment in termination proceedings, and continued employment absent dismissal for

cause. (*Id.* ¶ 15.)

In 2014, DSU terminated the employment of its theatre professor, Varlo Davenport, after Mr. Davenport was accused of injuring a student in his classroom. (*Id.* ¶ 17.) Mr. Peterson disagreed with, and was publicly critical of, DSU's decision to terminate Mr. Davenport. (*Id.* ¶¶ 18–19.) Mr. Peterson was also highly critical of Professor Mark Houser, chair of the theatre department, claiming Mr. Houser was incompetent in his leadership of the department. (*Id.*)

On March 2, 2018, Mr. Peterson received a "Notice of Dismissal and Termination of Appointment" from Defendant Michael Lacourse, DSU's Provost and Vice President of Academic Affairs. (*See* Dkt. No. 26, Ex. 4.) This Notice alleged that Mr. Peterson had violated the university's rules and regulations and engaged in professional misconduct because he, among other things, had disclosed confidential information, made improper representations on behalf of DSU, and "slandered" Mr. Houser and DSU's President, Richard Williams. (*See id.*) The Notice suspended Mr. Peterson with pay and prohibited him from entering DSU's campus pending final confirmation of his termination. (Dkt. No. 3, ¶ 24.)

Mr. Peterson requested a Faculty Review Board hearing of his termination. (*Id.* ¶ 25.) After hearing the evidence presented, the Faculty Review Board concluded that DSU had failed to provide a preponderance of information to satisfy the burden of proof for its accusations against Mr. Peterson. (*Id.* ¶ 29.) The Board recommended that Mr. Peterson be warned not to engage in inappropriate comments about DSU or its administration, and then reinstated as a tenured professor at DSU. (*Id.*)

Following a Faculty Review Board hearing, it is DSU's policy to leave the final decision as to a professor's termination with the president of the university. (*Id.* ¶ 30.) The president may either accept the Board's recommendation, request an additional hearing, or reject the Board's

conclusion. (*Id.*) Defendant Richard Williams, President of DSU at all relevant times in this case, was the subject of several of Mr. Peterson's criticisms at issue. (*Id.* ¶ 31.) For this reason, Defendant Williams elected to refer the matter to another authority. (*Id.*) The final decision of whether to terminate Mr. Peterson was ultimately left to Dr. Elizabeth Hitch, Associate Commissioner for Academic and Student Affairs for the Utah System of Higher Education. (*Id.*) After reviewing the case, Dr. Hitch concluded that there was sufficient evidence to support some of the allegations against Mr. Peterson, but she agreed with the Faculty Review Board that there was not a preponderance of information to support the termination of Mr. Peterson's employment. (*Id.* ¶ 32.) Accordingly, Dr. Hitch decided that Mr. Peterson should be suspended without pay for ten workdays, after which he would be reinstated as a tenured music professor. (*Id.* ¶¶ 32–33.) Dr. Hitch further decided that DSU would issue Mr. Peterson a "final chance" letter outlining the expectations for his continued employment. (*Id.*; *see also* Dkt. No. 15, Ex. 1.)

According to Plaintiff, Defendant Doajo Hicks, General Counsel at DSU, then drafted and presented Mr. Peterson with a "Last Chance Agreement" ("LCA"). (Dkt. No. 3, ¶¶ 35–36.) The LCA outlined Mr. Peterson's responsibilities at DSU going forward. The LCA also provided a number of limitations on Mr. Peterson's future conduct as a DSU professor. Among other things, these limitations included prohibiting Mr. Peterson from: engaging in any conduct to damage DSU's Voice, Music, Theater, Art, and Dance programs or faculty; participating in any disciplinary, tenure, and promotion committees, including faculty review boards, search committees, and the selection process or retention decisions for department chairs or deans; making unfounded or untruthful derogatory statements about DSU and its faculty, staff, students, or administration; and engaging in intimidating, threatening, or coercive conduct or speech with any DSU faculty member or student on DSU's campus or in a manner that would result in a

hostile work or educational environment. (*See* Dkt. No. 15, Ex. 3.) Any violation by Mr. Peterson of the terms expressed in the LCA "after the execution of th[e] Agreement" would allegedly result in his termination of employment from DSU. (*Id.*)

Mr. Peterson refused to sign the LCA because he felt that the LCA violated his civil rights and exceeded the terms of Dr. Hitch's final determination. (Dkt. No. 3, ¶¶ 39–41.) In August 2018, Mr. Peterson discovered that his employment at DSU had been terminated and has since been unable to find suitable employment. (*Id.* ¶¶ 42–43.)

Mr. Peterson filed his Complaint on August 16, 2019, alleging the following causes of action: (1) wrongful termination pursuant to 42 U.S.C. § 1983 ("Count One"); (2) prior restraint in violation of 42 U.S.C. § 1983 ("Count Two"); (3) civil conspiracy to violate constitutional rights in violation of 42 U.S.C. § 1983 ("Count Three"); (4) breach of contract ("Count Four"); and (5) wrongful termination in violation of Utah public policy ("Count Five"). On November 15, 2019, Defendants moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 8 and 12. The court grants Defendants' motion based on the following.

## MOTION TO DISMISS STANDARD

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). Under Rule 12(b)(6), the court must accept all well-pleaded allegations in the Complaint as true and view those allegations in the light most favorable to the nonmoving party. *Stidham v. Peace Officer Standards & Training*, 265 F.3d 1144, 1149 (10th Cir. 2001) (quoting *Sutton v. Utah Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)). The court may consider the complaint, any

documents attached thereto, and any external documents that are referenced in the complaint and whose accuracy is not in dispute. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, constitutes facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements,' do not count as well-pleaded facts." *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (quoting *Iqbal,* 556 U.S. at 678). Applying this standard, the court addresses each cause of action in turn.

## DISCUSSION

A. <u>Section 1983 Claim – Wrongful Termination Based on the Exercise of Free Speech Protected by the First Amendment</u>

Mr. Peterson claims that Defendants violated his First Amendment right to free speech when they retaliated against him after he "express[ed] criticisms of the competence of [Mark] Houser, a public employee, and the justness of Defendants' actions in the termination of [Varlo] Davenport." (Dkt. No. 3 ¶¶ 45–58.)

"[T]he First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos,* 547 U.S. 410, 417 (2006). However, "while the First Amendment invests public employees with certain rights, it does not empower them to constitutionalize the employee grievance." *Id.* at 418. Accordingly, when analyzing freedom of speech retaliation claims, courts must carefully consider both the

employee's right to free speech and the public employer's right to exercise control over the operations of its workplace. To balance these competing interests, such claims are governed by a five-step inquiry referred to as the *Garcetti/Pickering* analysis. *Nixon v. City & County of Denver*, 784 F.3d 1364, 1367 (10th Cir. 2015). Under this analysis, the court must consider:

> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interest, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Helget v. City of Hays*, 844 F.3d 1216, 1221 (10th Cir. 2017). The first three steps are to be decided as a matter of law by the district court. *Id.* at 1222. The last two steps are ordinarily for the trier of fact. *Id.* In this case, Plaintiff's freedom of speech retaliation claim is subject to dismissal because the court concludes, as a matter of law, that Plaintiff's statements were made pursuant to his official duties and do not reflect a matter of public concern.

It is well-established that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the constitution does not insulate their communication from employer discipline." *Seifert v. Unified Government of Wyandotte County*, 779 F.3d 1141, 1151 (10th Cir. 2015). The Tenth Circuit has "taken a broad view of the meaning of speech that is pursuant to an employee's official duties." *Chavez-Rodriguez v. City of Santa Fe*, 596 F.3d 708, 713 (10th Cir. 2010). The critical question for the court is "whether the speech at issue is ordinarily within the scope of an employee's duties," and speech falls within the scope of an employee's duties if it involves "the type of activities that the employee was paid to do." *Knopf v. Williams*, 884 F.3d 939, 945 (10th Cir. 2018). There is no bright-line rule governing when employees are speaking as part of their

official duties. *Lincoln v. Maketa*, 880 F.3d 533, 538 (10th Cir. 2018). Therefore, courts are directed to, on a case by case basis, "take a practical view of all the facts and circumstances surrounding the speech and the employment relationship." *Knopf*, 884 F.3d at 946 (10th Cir. 2018).

Mr. Peterson was a tenured professor at DSU at the time he made the statements at issue in this case. As a tenured faculty member of the university, Mr. Peterson's job duties included membership on certain committees at DSU, such as faculty review committees, tenure review committees, disciplinary committees, and employment or academic search committees. Adopting the Tenth Circuit's "broad view" of speech pursuant to an employee's official duties, this court finds that Mr. Peterson's speech at issue—concerning DSU's discipline of Mr. Davenport and Mr. Houser's performance as chair of the theatre department—sufficiently fell within the scope of Mr. Peterson's duties at DSU. Accordingly, Mr. Peterson's speech is not protected by the First Amendment under the circumstances.

Even if Mr. Peterson's speech was not made pursuant to his official duties, his retaliation claim would still be subject to dismissal because none of Mr. Peterson's speech was on a matter of public concern. Matters of public concern are defined as "those of interest to the community, whether for social, political, or other reasons." *Lytle v. City of Haysville, Kan.,* 138 F.3d 857, 863 (10th Cir. 1998). To determine whether speech pertains to a matter of public concern, courts consider "the motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals with personal disputes and grievances unrelated to the public's interest." *Lighton v. Univ. of Utah*, 209 F.3d 1213, 1224 (10th Cir. 2000). The Tenth Circuit has found that speech that is "internal in scope and personal in nature"—such as speech regarding grievances about internal departmental affairs, terms of employment, and workplace frustrations—does not

constitute a matter of public concern. *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1205–06 (10th Cir. 2007) (holding that elementary school teachers' statements relating to the resignation of other teachers and "complaints about a superior's job performance or management style" were not matters of public concern).

Here, Mr. Peterson's speech involved criticisms of his colleague's termination and the management of DSU's theatre department. Because Mr. Peterson's speech relates mainly to workplace frustrations, internal departmental affairs, the theatre department's management style, and personnel disputes at DSU, the court finds that his statements do not qualify as matters of public concern. Such speech is internal in scope and personal in nature. Mr. Peterson argues that his criticisms of a public university, particularly his concerns that DSU improperly handled Mr. Davenport's termination, constitute matters of public concern. "It is not enough, however, that the public interest was part of the employee's motivation. . . . [T[he relevant legal question [i]s whether the employee's *primary* purpose was to raise a matter of public concern." *Singh v. Cordle*, 936 F.3d 1022, 1035 (10th Cir. 2019). Even though some of his criticisms of DSU and its administration may have been related to matters of public concern, Mr. Peterson's speech, as alleged in his Complaint, mainly constituted his individual grievances with DSU's theatre and music departments and his personal criticism of Mark Houser. Accordingly, Mr. Peterson's speech does not qualify as protected speech to support his § 1983 claim.

B. <u>Section 1983 Claim – Prior Restraint in Violation of the First Amendment</u>

In Mr. Peterson's second cause of action, he alleges that the Last Chance Agreement presented to him by DSU constitutes an unlawful prior restraint on his First Amendment rights. As set forth above, Mr. Peterson's speech concerning faculty discipline and management at DSU is not protected speech under the First Amendment. Furthermore, Mr. Peterson has not

sufficiently alleged that any speech was actually curtailed as a result of the LCA. Indeed, Mr. Peterson alleges that the Agreement was never executed because Mr. Peterson refused to sign the LCA. (Dkt. No. 3, ¶ 41.) Because Mr. Peterson does not allege well-pled facts to support the conclusion that the LCA actually chilled or altered his speech in any way, Mr. Peterson's second cause of action fails. *See Brammer-Hoelter v. Twin Peaks Charter Acad.,* 602 F.3d 1175, 1183–84 (10th Cir. 2010).

### C. Section 1983 Claim – Civil Conspiracy to Violate Constitutional Rights

Count Three of Plaintiff's Complaint alleges that Defendants conspired through an express or implied agreement to violate Mr. Peterson's constitutional rights. To succeed on a claim of civil conspiracy, "a plaintiff must allege specific facts showing an agreement and concerted action amongst the defendants." *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 533 (10th Cir. 1998). Speculative or conclusory allegations of conspiracy do not suffice. *See id.* The court finds that Mr. Peterson's Complaint lacks the necessary specific factual allegations to state a valid § 1983 claim. In particular, Mr. Peterson fails to identify what actions were taken and by which Defendants to support a plausible claim of civil conspiracy.

### D. State Law Claims

Plaintiff also brings claims under Utah state law alleging breach of contract and wrongful termination in violation of Utah public policy. However, under 28 U.S.C. §1367(c)(3), a district court may decline to exercise supplemental jurisdiction over state law claims if the court has dismissed all claims over which it had original jurisdiction. Having granted Defendants' motion to dismiss Plaintiff's federal claims, the court declines to exercise supplemental jurisdiction over Plaintiff's state law claims and dismisses Counts Four and Five without prejudice. *See Bd. of Cty. Commissioners of Sweetwater Cty. v. Geringer*, 297 F.3d 1108, 1115 n.6 (10th Cir. 2002)

("The district court's ruling [in which it declined to review the state-law claims], comports with our general admonishment that district courts should dismiss state claims without prejudice after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial.").

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Dkt. No. 15) is hereby GRANTED. The court dismisses Plaintiff's federal claims (Counts One - Three) with prejudice. The court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims (Counts Four - Five), and the state law claims are therefore dismissed without prejudice.

DATED this 15th day of April, 2020.

BY THE COURT:

Dee Benson
United States District Judge